**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHAEL QUINN NASSRY**<br>158 W. Ridge Lane<br>Warriors Mark, PA 16877,<br><br>Plaintiff,<br><br>v.<br><br>**THE PENNSYLVANIA STATE UNIVERSITY**<br>The Pennsylvania State University<br>201 Old Main<br>University Park, PA 16802,<br><br>and<br><br>**NICHOLAS P. JONES**<br>Executive Vice President and Provost<br>The Pennsylvania State University<br>201 Old Main<br>University Park, PA 16802,<br><br>and<br><br>**LEE KUMP**<br>Dean, College of Earth and Mineral Sciences<br>510B Penn State Innovation Hub<br>123 South Burrows Street<br>State College, PA 16801,<br><br>and<br><br>**CYNTHIA BREWER**<br>Department of Geography<br>302 Walker Building<br>The Pennsylvania State University<br>University Park, PA 16802<br><br>and | : | CIVIL ACTION<br><br>NO.<br><br>**JURY TRIAL DEMANDED** |

**DENICE WARDROP**
Chesapeake Research Consortium
645 Contees Wharf Road
Edgewater, MD 21037

and

**SARAH CHAMBERLAIN**
Huck Institute of the Life Sciences
208 Mueller Laboratory
The Pennsylvania State University
University Park, PA 16802

Defendants

## COMPLAINT OF PLAINTIFF MICHAEL QUINN NASSRY

Plaintiff Michael Quinn Nassry ("Dr. Nassry" or "Plaintiff"), by and through his attorney, Law Office of Arthur D. Goldman, LLC, complains of the Defendants The Pennsylvania State University ("Penn State", "University" or "Defendant"), Nicholas P. Jones ("Provost Jones"), Lee Kump ("Dean Kump"), Cynthia Brewer ("Dr. Brewer"), Denice Wardrop ("Dr. Wardrop"), Sarah Chamberlain ("Ms.. Chamberlain") as follows:

## INTRODUCTION

1. This action for declaratory, injunctive, monetary and other appropriate relief is brought by Plaintiff Michael Nassry, to redress intentional violations by the Defendants, The Pennsylvania State University, et al., of rights secured to him by laws of the United States of America and the statutory and common law of the Commonwealth of Pennsylvania for violations

of federal and state laws relating to unlawful sex discrimination, retaliation, whistle blowing, and related claims.

2. This action arises under Title VII, as amended by the Civil Rights Act of 1991, 42 U.S.C. §2000e, *et seq*. ("Title VII"), the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §§951, *et seq., The Pennsylvania Whistleblower Law,* 43 P.S. §§ 1421, *et seq*.; and the tort and contract law of this Commonwealth of Pennsylvania.

**JURISDICTION AND VENUE**

3. This action arises under 28 U.S.C. §1331 which provides for original jurisdiction of plaintiff's claims arising under the laws of the United States and over actions to recover damages and to secure equitable and other relief under the appropriate governing statutes.

4. Jurisdiction over the federal claims is invoked pursuant to 28 U.S.C. §1343(4) and 29 U.S.C. §216(b), and over the state law claims pursuant to the doctrine of pendant jurisdiction.

5. This Court has jurisdiction over Plaintiff's state claims pursuant to its supplemental jurisdiction as codified at 28 U.S.C. §1367.

6. Plaintiff has exhausted all administrative remedies, having filed timely complaints of gender discrimination and retaliation on October 3, 2022 with the Equal Employment Opportunity Commission ("EEOC") and with the Pennsylvania Human Relations Commission ("PHRC") and has taken all other steps necessary to bring this action before this Court.

7. The EEOC was not able to resolve the controversy and issued a "right to sue" letter to the Plaintiff, dated October 21, 2022, and received October 29, 2022, informing and advising the Plaintiff that it was unable to resolve the controversy as described to it and that it was not prepared to take further efforts. A copy of the "right to sue" letter is attached hereto as Exhibit "A."

8. The Plaintiff has timely filed this action within the proscribed ninety days following receipt of the "right to sue" letter which was dated October 21, 2022, and received October 29, 2022. Venue is proper pursuant to 42 U.S.C. §1391(b).

9. Declaratory, injunctive and equitable relief are sought pursuant to Title VII, as amended by the Civil Rights Act of 1991, 28 U.S.C. §2001 and §2002, the Age Discrimination in Employment Act, 29 U.S.C. §§621 *et seq.* ("ADEA")and the PHRA, 43 P.S. §962.

10. Compensatory and punitive damages are sought pursuant to Title VII, as amended by the Civil Rights Act of 1991, the PHRA, and under the pendent state claims; and other damages are sought, including but not limited to back pay and front pay and other lost benefits under Title VII, as amended by the Civil Rights Act of 1991, the PHRA, and tort law.

11. Costs and attorneys' fees are sought pursuant to Title VII, as amended by the Civil Rights Act of 1991, 42 U.S.C. §2000e-5(k); Rule 54 of the Federal Rules of Civil Procedure, and the PHRA, 43 P.S. §962 (c.2).

**PARTIES**

12. Plaintiff Michael Nassry is a 43 year-old adult male residing at 158 W. Ridge Lane, Warriors Mark, PA 16877, with a date of birth of xxxx, xx, 1980.

13. Defendant The Pennsylvania State University is a The Pennsylvania State University is a public state-related land-grant research university with campuses and facilities throughout Pennsylvania but with its principal location at 201 Old Main, University Park, PA 16802.

14. Defendant Nicholas P. Jones is an adult individual and the Executive Vice President and Provost of The Pennsylvania State University with an office located at 201 Old

Main, University Park, PA 16802and was the top academic officer for the University where Michael Nassry was employed at Penn State's University Park campus.

15. Defendant Lee Kump is an adult individual and the Dean, Earth and Mineral Sciences of Penn State with an office located at 510B Penn State Innovation Hub, 123 South Burrows Street, State College, PA 16801 and was the Dean of the College where Michael Nassry was employed at Penn State's University Park campus.

16. Defendant Cynthia Brewer is an adult individual and a professor for Penn State in the Department of Geography with an office located at 302 Walker Building, University Park, PA 16802 and was the department head where Michael Nassry was employed at Penn State's University Park campus.

17. Defendant Denice Wardrop is an adult individual and a research professor in the Department of Geography for Penn State with an office located at the Chesapeake Research Consortium, 645 Contees Wharf Road, Edgewater, MD 21037 and was Michael Nassry's direct supervisor in the Riparia Research Center in the Department of Geography at Penn State's University Park campus.

18. Defendant Sarah Chamberlain is an adult individual and an associate research professor in the Huck Institute of the Life Sciences for Penn State with an office located at 208 Mueller Laboratory, University Park, PA 16802 and was Michael Nassry's co-worker in the Riparia Research Center in the Department of Geography at Penn State's University Park campus.

## FACTUAL ALLEGATIONS

### General Facts and Background

19. Defendant The Pennsylvania State University is a public state-related land-grant research university which employs approximately 17,000 individuals across 24 campuses.

20. Dr. Nassry was hired by the University on May 6, 2013, with the title of Postdoctoral Scholar.

21. Dr. Nassry earned his B.S. and M.S degrees from the Penn State Department of Agricultural and Biological Engineering prior to working as an environmental and human health risk assessment professional for a private consulting firm.

22. Dr. Nassry then earned his Ph.D. from Virginia Tech modeling glacier meltwater hydrology and carbon chemistry using stable water isotopes and carbon fingerprinting in Southeast Alaska.

23. During his employment in the Riparia research center in the Penn State Department of Geography, Dr. Nassry served as the hydrology subject matter expert for all major research grants in the center, taught undergraduate classes for the College of Earth and Mineral Sciences and the College of Agriculture, advised 6 minors, and was twice awarded the College of Earth and Mineral Sciences CAUSE grant where he led a year-long course that included student research and travel components in Peru and Alaska.

24. This case involves incidents of sexual harassment related to the unwanted romantic advances from an older female co-worker, Sarah Chamberlain, which began in 2015 and escalated through 2018 when Dr. Nassry first caught her disparaging him at a professional conference.

25. These events occurred at the University Park campus and at off-campus meetings and professional conferences.

26. This case also involves incidents of gender-related discriminated in the form of plagiarism related to Denice Wardrop and her former grad student publishing Dr. Nassry's work dating back several years, but of which he became aware of the behavior in the spring of 2017.

27. Retaliation and threats relating to his reporting of these incidents began in the spring of 2019 and continued through 2022, after Dr. Nassry reported the initial discriminatory actions.

28. In addition, this case involves incidents of the Plaintiff's whistle-blowing about the misuse of department funds and the retaliation against him for doing so.

29. These incidents were not only tolerated by Defendant Penn State and its administration, but were ratified by it and resulted in retaliation against the Plaintiff.

30. The following outlines several years of retaliation and threats by Dr. Nassry's supervisor (Denice Wardrop), harassment from co-worker (Sarah Chamberlain), and plagiarism of his research products by Denice Wardrop and her former grad student that forced Dr. Nassry's resignation from his full-time faculty position at Penn State.

31. Prior to his resignation in 2021, Dr. Nassry attempted to resolve the issues described herein by first reporting them to his direct supervisor, and then reporting his concerns of harassment, plagiarism, threats, retaliation, potential misuse of funds, and a hostile work environment to several recommended Penn State offices including the Penn State Office of Research Protections, the Penn State Affirmative Action Office, the Penn State Office of Ethics and Compliance, as well as individuals including the College of Earth and Mineral Sciences Ombudsperson, Geography Department Head, and Research Center Director.

32. On several occasions, Dr. Nassry reported harassment from an older female co-worker (Sarah Chamberlain) to his supervisor (Denice Wardrop).

33. The harassment was a result of Dr. Nassry's refusal to accept the co-worker's romantic advances, her offer to "go out to dinner", and because he blocked her number from his cell phone due to repeated unnecessary and unwanted calls.

34. Older female colleagues asked if Dr. Nassry was interested in dating the co-worker and said, "she really needs to get laid".

35, After Dr. Nassry rejected her romantic advances, he caught the co-worker disparaging him to colleagues outside of Penn State on multiple occasions.

36. Plaintiff later learned Denice Wardrop had a history of acting as a matchmaker in the workplace and she tried to act as a matchmaker without his knowledge.

37. Because of Sarah Chamberlain's continued presence and repeated harassment at conferences, Dr. Nassry stopped participating in professional conferences and workshops with colleagues and began attending alternative events.

38. Over the years, the retaliation and discrimination intensified.

39. Denice Wardrop permitted her female former student, Jessica "JB" Moon, to claim credit for Plaintiff's work in multiple publications.

40. Denice Wardrop initially apologized for Ms. Moon's actions, claimed that she admitted to copying Dr. Nassry's calculations, and promised it would be rectified by including him as an author in future papers that used his work.

41. When the behavior continued, Denice Wardrop claimed she "didn't recall having documentation of that conversation" and claimed she determined Jessica Moon had actually

performed the work in question and that Ms. Moon did not have contact with Plaintiff during the time period in question.

42. Denice Wardrop also claimed she forgot to include Dr. Nassry in the meeting and forgot to inform him of the outcome.

43, Denice Wardrop also added another female graduate student to a different publication despite minimal contributions, which was inconsistent for the standard she set for his work.

44. When Denice Wardrop became the Director of Riparia and his direct supervisor in July 2018, Dr. Nassry was retaliated against by being moved off funded projects, assigned large amounts of unpaid administrative/service work, excluded from new funded projects without explanation or notification, and isolated from connections with collaborators inside and outside Penn State.

45. After Dr. Nassry's repeated attempts to have the above issues addressed, Denice Wardrop threatened him on multiple occasions, isolated him from research projects, and suggested she would block him from a job opportunity by volunteering to be on the hiring committee after he was selected as a finalist.

46. Denice Wardrop repeatedly claimed the College of Earth and Mineral Sciences Dean Lee Kump and Geography Department Head Cindy Brewer were her friends and "on her side".

47. Because of the threats by Denice Wardrop, the isolation from research projects, the continued publication of the Plaintiff's uncredited work by Denice Wardrop and her former student, and the harassment from Sarah Chamberlain, Dr. Nassry had no alternative but to resign from his full-time faculty position at Penn State.

48. This has caused Plaintiff stress impacting his health, damaged his career, and had a significant negative financial impact.

**Facts Related to Sexual Harassment (Gender Discrimination)**

49. The first indication that there would be issues involving sexual harassment and discrimination began in 2015 or 2016.

50. At this time, during multi-day meetings at the EPA Crystal City offices with Denice Wardrop and EPA staff, Michael Nassry was pulled aside while walking to a restaurant for dinner by a senior EPA employee who was friends with both Sarah Chamberlain and Denice Wardrop, told Plaintiff: "you know, Sarah really needs to get laid."

51. In the fall of 2016, Sarah Chamberlain requested to have meetings to write a Penn State Institute of Energy and the Environment (PSIEE) seed grant proposal at a bar (Happy Valley Brewery) but did not want to discuss the grant proposal during the meeting.

52. Shortly thereafter, in October 2016, Ms. Chamberlain walked into Dr. Nassry's office and asked him if he wanted to have dinner with her, but he politely declined her invitation.

53. The inappropriate and unwelcomed behavior continued in spring 2017 when Dr, Nassry began to receive unnecessary calls and text messages from Ms. Chamberlain, for example, Dr. Chamberlain would request emails of her friends that she already knew as an effort to engage with Plaintiff.

54. After repeated unnecessary calls and text messages from Ms. Chamberlain, Mr. Nassry informed her that he was blocking her number from his cell phone.

55. After hearing this, Ms. Chamberlain walked out of Plaintiff's office and cried to Dr. Robert Brooks, a professor of Geography and longtime director of Riparia (a research center

in the Department of Geography, previously named the Penn State Cooperative Wetland Center ) for approximately one hour in his office.

56. When Ms. Chamberlain left the building Dr. Brooks said: "Please don't talk to her because I can't listen to her cry anymore" to which Dr. Nassry replied: "That's the point."

57, Incidents of harassment and discrimination continued into the summer of 2018.

58. Dr. Brooks retired effective June 30, 2018, after which Denice Wardrop was named director of Riparia and Dr. Nassry's direct supervisor.

59. Michael Nassry was given a project to complete after Ms. Chamberlain and Dr. Wardrop used budget funds without participating in the corresponding amount of work.

60. On Tuesday, November 13, 2018, the Riparia research group attended the Mid-Atlantic Wetland Work Group (MAWWG) conference in Cooperstown, NY.

61. Shortly after arriving at the conference center / hotel, Ms. Chamberlain began drinking, and Mr. Nassry caught her loudly disparaging him to PA DEP staff on the second floor landing of the hotel.

62. On Wednesday, November 14, 2018, Dr. Nassry made a full report to Dr. Wardrop prior to lunch at the MAWWG meeting to which Dr. Wardrop responded "Sarah has a history of drinking too much and making embarrassing decisions.".

63. Professor Wardrop assured Dr. Nassry she would address Ms. Chamberlain's behavior and promised it would never happen again.

64. Nevertheless, Ms. Chamberlain was so hungover the following day, she arrived at the morning seminar three hours late claiming she felt sick because she "ate bad shrimp".

65. The alleged "bad shrimp" was from a large group meal at a nearby restaurant, and there were no other reported illnesses from attendees eating the same menu item.

66. Sarah Chamberlain's drinking pattern, behavior, and excuses were so well known, graduate students would later joke they were "going to tailgate and eat bad shrimp".

67. The incidents continued in 2019.

68. On January 1, 2019, Sarah Chamberlain sent a group email to Riparia research center personnel and requested their meeting notes from the MAWWG conference because her notes "have a couple holes" after missing several hours of the conference from "bad shrimp" and she needed to submit a progress report with the meeting notes.

69. Inexplicably, Sarah Chamberlain received a promotion to Associate Research Professor (formally announced by Department Head Cindy Brewer on May 28, 2019).

70. Denice Wardrop served as the Chair of the Promotion Review Committee and Cindy Brewer's (the department head at the time) email suggested the promotion decision was approved by Dean Lee Kump.

71. In February 2019, a conference/workshop event was held at the Penn Stater Hotel and Conference Center in State College, PA sponsored by the Pennsylvania Department of Environmental Protection (PA DEP Water Workshop).

72. After the morning session, a buffet style lunch was held at The Gardens restaurant located on the 1st floor of the conference center.

73. Mr. Nassry sat down at a table with his meal and then noticed Sarah Chamberlain pointing at him while speaking to a conference attendee (staff from the Western Pennsylvania Conservancy), after which the attendee came over to the table where Dr. Nassry sat down, picked up belongings from all the chairs, and said "Sorry, we were asked to move."

74. The attendee then walked over to Sarah Chamberlain, and they sat at a different table with PA DEP staff.

75. On April 22, 2019, Dr. Nassry informed Denice Wardrop by email he would not be attending the Society of Wetland Scientist (SWS) Conference with the rest of the Riparia research group because of Sarah Chamberlain's behavior at previous conferences.

76. Denice Wardrop did not respond to this email.

77. On May 28, 2019, Dr. Nassry again requested Denice Wardrop address Sarah Chamberlain's behavior during his Annual Performance Review process for 2018.

78. On May 28-31, 2019, Denice Wardrop presumably booked an Airbnb so all research center employees would lodge together for the Society of Wetland Scientist Annual Meeting in Baltimore MD.

79. Previously, the research group did not lodge in a group rental house and the only other male (grad student) was also highly uncomfortable about the lodging arrangements.

80. On June 4-5, 2019, Denice Wardrop told Dr. Robert Brooks (retired and in Maine at the time) to handle "the issue" of Sarah Chamberlain's continuing harassment after she claimed she spoke with several people who could not help the situation.

81. Dr. Brooks told Dr. Nassry that Denice Wardrop would not fire Sarah Chamberlain because "she has kids in school."

82. Instead, Dr. Nassry was asked to write Sarah Chamberlain an apology letter, to which he asked "for what?"

83. Dr. Brooks shrugged his shoulders and said "I don't know, I'll check, I guess just make something up."

84. Dr. Brooks later came back and said Sarah Chamberlain claimed Dr. Nassry didn't say "hello" to her in the hallway so he should write an apology letter focused on that encounter.

85. Being retaliated and discriminated against, Dr. Nassry refused to write the apology letter.

86. Surprisingly, in June 2019, Mr. Nassry received an apology letter from Sarah Chamberlain via Dr. Brooks to "clear the deck" stating that Dr. Nassry overheard private conversations between friends and that her unprofessional indiscretions would not happen again.

87. The following month, Denice Wardrop emailed Dr. Nassry and requested he perform administrative work for Sarah Chamberlain in retaliation.

88. Dr. Nassry responded to Denice Wardrop's email and refused, citing Sarah Chamberlain's harassment and Denice Wardrop's promises that Sarah Chamberlain would be removed from the research group.

89, Denice Wardrop walked into Dr. Nassry's office and screamed at him accusing him of blackmailing her by including details of Sarah Chamberlain's harassment in an email.

90. The harassment, discrimination and retaliation continued in 2020.

91. In June 2020,_Dr. Nassry led the writing and submission of an EPA proposal but was intimidated into not putting his name on the submitted document because of Denice Wardrop and Sarah Chamberlain's continued harassment, their relationships with EPA staff, and Denice Wardrop's continuing efforts to disparage Dr. Nassry and isolate him from relationships with outside agencies.

92. Dr. Nassry was bullied into believing the Riparia research center had a better chance of receiving funding if his name was not on the proposal.

93. On March 1, 2021, Dr. Nassry decided the situation was intolerable and informed the new director of Riparia (Dr. Trevor Birkenholtz) he planned to resign from Penn State effective June 30, 2021.

94. Dr. Nassry did not advise Dr. Birkenholtz of the harassment, plagiarism, and retaliation as the reason why he planned to resign, at the recommendation of the Office of Research Protections (ORP) with whom he had been working in response to the discriminatory and harassing environment and who told Dr. Nassry that any conversation he had with Dr. Birkenholtz would NOT be confidential and could prompt Denice Wardrop to further retaliate against him.

95. On March 16, 2021, following a phone call from Dr. Birkenholtz asking Dr. Nassry about Denice Wardrop's problematic behavior directed at him and other men, Dr. Nassry then informed the new Director of Riparia that his resignation was compelled and was the result of a continuing pattern of harassment from Denice Wardrop and Sarah Chamberlain.

96. Dr. Nassry stated that he had been working with another Penn State office to address the issues, and that office had recommended Dr. Nassry conceal additional details to Dr. Birkenholtz at that time, both of which were clearly not in his best interests.

97. On June 30, 2021, forced to resign from his full-time faculty position at Penn State, Dr. Nassry remained as a part-time, remote employee to continue advising a graduate student until December 31, 2021.

98. At the recommendation of the Office of Research Protections (ORP), on December 10, 2021, Dr. Nassry requested a meeting with the new Geography Department Head (Brian King), emailed the Penn State Affirmative Action Office (AAO), and contacted the Ethics and Compliance Office to file a report about what had happened.

99. On December 17, 2021, Dr. Nassry received a return call from Mauricio Jimenez from the Penn State Office of Ethics and Compliance and provided him with a summary of his

experiences regarding plagiarism of his work (discussed below) as well as, harassment, retaliation, and concerns about the potential misuse of budget funds.

100. Despite no longer having a full-time position, the harassment, discrimination and retaliation continued into 2022.

101. On January 12, 2022, Dr. Nassry met with the new Geography Department Head (Brian King) and the new Director of Riparia (Trevor Birkenholtz) and informed them of the details regarding plagiarism, harassment, retaliation, and his concerns about the misuse of budget funds.

102. They apologized to Dr. Nassry and informed him that both Denice Wardrop and Sarah Chamberlain were no longer employed by the Geography Department and their leaving of the department was not related to any of his concerns raised during the meeting.

103. Whether this was true or not, both Denice Wardrop and Sarah Chamberlain's Penn State profiles were still listed in the Geography Department / Riparia Center directories, and Dr. Nassry would later find out that Denice Wardrop remained under the supervision of The Geography Department Head in her new role with the Dutton Institute.

104. On January 14, 2022, after not receiving a response to an email sent in December, Dr. Nassry followed-up with another email to the Affirmative Action Office (AAO) requesting a meeting based on the recommendation of the Office of Research Protections.

105. Finally, on January 19, 2022, Carmen Borges from the Penn State AAO office responded to a meeting request from Dr. Nassry via email requesting a zoom meeting to address his issues on January 21, 2022.

106. At the Zoom meeting with Carmen Borges from the Penn State AAO, Dr. Nassry provided her with an overview of the harassment, plagiarism, retaliation, and his concerns

regarding the misuse of budget funds after which Carmen Borges recommended Dr. Nassry fill out an online complaint form.

107. On February 27, 2022, Dr. Nassry submitted an online complaint form and summary of his concerns to the Penn State AAO, and on March 29, 2022, he submitted additional documentation and emails to the Penn State AAO.

108. On May 19, 2022, Carmen Borges requested additional documentation from Dr. Nassry and the next day he submitted additional documentation to the Penn State AAO focusing on his resignation timeline and specific statements made by Sarah Chamberlain.

109. In response to Dr. Nassry offering to provide additional documentation, on July 7, 2022, Carmen Borges from the Penn State AAO stated "No need for additional information".

110. On July 19, 2022, during an in-person meeting with the Penn State AAO on the Penn State University Park Campus, Carmen Borges stated that she had spoken with Brian King and Trevor Birkenholtz and revealed the following:

- Brian King told Carmen Borges he "knows what Denice is about" and he's looking into issues as Denice Wardrop was employed by the Dutton Institute under the Department of Geography;
- Carmen Borges said she wouldn't be surprised if Brian King took action;
- Trevor Birkenholtz claimed to not know anything about Denice Wardrop;
- Both Brian King and Trevor Birkenholtz believe Dr. Nassry and respect him;
- Both Brian King and Trevor Birkenholtz don't understand why the Penn State ORP refused to open an investigation into plagiarism (discussed in detail below);

- The Penn State AAO office did not want to see additional documentation from Michael Nassry and planned to talk to Denice Wardrop but not with Sarah Chamberlain;
- AAO office said they doubt they could do anything, and Michael Nassry should have contacted Human Resources instead of the EMS Ombudsperson, Office of Research Protection, Office of Ethics and Compliance, and the Affirmative Action Office.

**Facts Related to Plagiarism (Gender Discrimination)**

111. In the fall of 2013, Dr. Nassry was asked by Denice Wardrop to utilize his background in hydrology and experience working with large hydrologic datasets to calculate hydrology metrics for research referred to as the Ecosystems Services Project (ESP) funded by the U.S. EPA: EPA Agreement Number R-834262-01; collaborators were Denice Wardrop, Jessica "JB" Moon, Aliana Britson, and Siobhan Fennessy.

112. On October 31, 2013, Dr. Nassry was invited to collaborate on the ESP shared data folder in BOX (on online document sharing and collaboration tool used by Penn State at the time).

113. On November 4-5, 2013, Dr. Nassry proposed hydrology metrics and formulas to calculate relevant hydrology information, which recommendations were based on previous research and communications with team members.

114. Dr. Nassry took the lead in calculation of hydrology metrics for the ESP project on November 8, 2013.

115. Later that month, Dr. Nassry calculated relevant hydrology metrics from raw data (groundwater wells), which calculations were performed in Microsoft Excel.

116. He then provided hydrology metrics, description of calculation methodology, calculation datasheets, and results to the research team including Denice Wardrop and Jessica "JB" Moon.

117. On November 26, 2013, Dr. Nassry provided the final report to his supervisor (Rob Brooks).

118. In the spring of 2014, Siobhan Fennessy requested hydrology metrics and a summary of Dr. Nassry's work related to the ESP project.

119. On February 18, 2014, Dr. Nassry provided data, calculation methods, and a description of the work he completed for the ESP project to Siobhan Fennessy and the project team including Denice Wardrop and Jessica "JB" Moon.

120. In the Spring 2015, Denice Wardrop requested Dr. Nassry provide additional hydrology calculations from the ESP data.

121. On March 17, 2015, Dr. Nassry calculated additional hydrology metrics and shared these with Denice Wardrop.

122. Between November/December 2015 through January 2016, Jessica "JB" Moon requested Dr. Nassry provide hydrology metrics and calculations from the ESP data.

123. Subsequently, on January 5, 2016, Dr. Nassry provided eight files containing hydrology metrics to the project team including Denice Wardrop and Jessica "JB" Moon.

124. Without Dr. Nassry's knowledge or notification, an article was published in 2016 known as Effects of Human Activity on the Processing of Nitrogen in Riparian Wetlands: Implications for Watershed Water Quality, DOI 10.1007/978-3-319-38927-1_1.

125. The listed authors were all women, Denice H. Wardrop, M. Siobhan Fennessy, Jessica Moon, and Aliana Britson.

126. In Spring 2017, Dr. Nassry became aware an article was published based on the ESP project.

127. At the end of March or early April 2017, during a Riparia research group meeting, an announcement was made that Denice Wardrop and Jessica "JB" Moon published an article related to the ESP report, and Dr. Nassry immediately questioned why he wasn't included as an author.

128. Following the meeting, Denice Wardrop sent an aggressive email about the questioning of authorship of articles.

129. At some time after the meeting, Denice Wardrop came into Dr. Nassry's office and apologized and also informed Dr. Nassry that Jessica Moon copied his calculations using two screens and that Ms. Moon thought it was ok if she used his work.

130. Denice Wardrop claimed that she said it was not ok.

131. On April 25, 2017, Denice Wardrop sent an email apologizing for not including Dr. Nassry in the author list and promised to include him as an author in next paper using the ESP data he calculated in the journal Ecological Engineering.

132. During the Society of Wetland Scientist (SWS) Conference in Denver, CO in May 29-31, 2018, Denice Wardrop presented data and figures Dr. Nassry had developed from hydrology work focusing on groundwater patterns in high altitude wetlands in Peru hours before his presentation titled "Hydrology Characteristics of High-Altitude Andean Peatlands."

133. When someone from the audience asked Denice Wardrop a question about the figures related to depleted water isotope values, she was not able to answer the question (because she wasn't familiar with the data or isotope hydrology).

134. Denice Wardrop apologized to Dr. Nassry after the presentation session, characterized her use of his data and figures as a "misunderstanding" because Dr. Nassry shared the figures with her, and said it's a "lesson learned" about communication.

135. This incident demonstrates a behavior pattern both in the use of Dr. Nassry's work, the apology, and characterizing it as a misunderstanding / communication issue rather than the intentional use of his work.

136. In or around May or June 2018, after not being selected as a finalist for the Penn State Director of Sustainability, Denice Wardrop was removed from her position as interim director of that institute after an incident with PSU Provost Nick Jones.

137. Denice Wardrop later indicated the candidate selected as the new Director of Sustainability was disliked by co-workers at his previous job and shouldn't be trusted.

138. Denice Wardrop stated to Dr. Nassry and other co-workers she was escorted out (either from the meeting or to clean out her office) by Penn State security following the incident.

139. Nonetheless, Denice Wardrop continued to be employed by Penn State, as she was named the new director of the Riparia research center, and a new position was created for her as the director of student engagement for the College of Earth and Mineral Sciences.

140. On June 30, 2018, Riparia director and Michael Nassry's supervisor, Dr. Robert Brooks, retired from Penn State and was replaced by Denice Wardrop who was named new Director of Riparia and the Director of the College of Earth and Mineral Sciences (EMS) Engaged Scholarship, becoming Dr. Nassry's direct supervisor.

141. Around May 1-3 2019, Dr. Nassry emailed the EMS Ombudsperson (Jose Fuentes) seeking advice on how to proceed with plagiarism and harassment issues and planned to meet with him the week of May 20, 2019 when both were on campus.

142. Following a second round Zoom interview, on May 7, 2019, Dr. Nassry was selected as a finalist for the Director of the Penn State Water Faculty Consortium position and the final in-person interview was scheduled for late June.

143. During his Annual Review meeting for 2018, on May 21, 2019, Dr. Nassry again requested Denice Wardrop address the plagiarism of his hydrology work, and she indicated she would follow-up with Jessica Moon.

144. Dr. Nassry informed Denice Wardrop he was planning to meet with the EMS Ombudsperson and she informed him that she had already spoken to Jose Fuentes, that he could not help resolve the matter, and that Dr. Nassry should not speak to him.

145. Because of that conversation, Dr. Nassry did not follow-up with the Ombudsperson.

146. On May 28, 2019, Dr. Nassry followed up with Denice Wardrop and again requested she address the plagiarism of his hydrology work.

147. Shortly thereafter, in June 2019, Denice Wardrop was not selected as a finalist for her then current position as the Director of Student Engagement for EMS.

148. On or around June 4 or 5, 2019, Denice Wardrop came into Dr. Nassry's office and indicated that her friend (Mike Zeeman) was on the search committee for the EMS Director of Student Engagement position.

149. Apparently, Mike Zeeman indicated Del Bright and John Hellman were supportive of the other candidate and a decision was made without Mike Zeeman present.

150. Denice Wardrop claimed that Undergraduate Dean Yvette Richardson lied to her about the position, and Dr. Nassry should NOT teach the 1st year seminar (Communication in Water Science) with Del Bright for Dean Richardson's office.

151. Dr. Nassry had previously asked for and received permission from Denice Wardrop to teach the class.

152. Denice Wardrop then warned Dr. Nassry that she volunteered to be on the final interview committee for the Penn State Water Faculty Consortium Director position he was interviewing for later in the month and said there would be "consequences."

153. Later that year, on November 14, 2019, Dr. Nassry was asked by Denice Wardrop to participate on a paper related to research in wetlands in Peru after writing proposals and being awarded the EMS CAUSE program for work in the Peruvian Andes the previous two years with Denice Wardrop and Del Bright.

154. Dr. Nassry did not respond to Denice Wardrop via email because of her previously screaming at him and instructing him not to email about "sensitive and nuanced" topics.

155. On November 17, 2019, Denice Wardrop again asked Dr. Nassry to respond to her request about participating in the paper.

156. On November 19, 2019, Dr. Nassry informed Denice Wardrop it would not be appropriate for him to collaborate with anyone who co-authored a paper that plagiarized his work until the plagiarism issues were resolved.

157. On November 26, 2019, Dr. Nassry met with Denice Wardrop in her office at 1:30 p.m. with the following points made:

- Denice Wardrop met with Jessica "JB" Moon and decided she did not copy Dr. Nassry's work and it was not plagiarism;
- Denice Wardrop forgot to include Dr. Nassry in the meetings, emails, phone conversations, and forgot to inform him of results and publications;

- Denice Wardrop stated it was Dr. Nassry's fault for not informing her of his concerns earlier;
- Denice Wardrop response to Jessica Moon's admission of copying calculations was "I don't recall having documentation of that conversation"; and
- As Dr. Nassry was leaving her office, Denice Wardrop said Geography Department Head Cindy Brewer and EMS Dean Lee Kump were her friends and were "on her side".

158. At the limit of his endurance, in January 2020, Dr. Nassry was forced to start applying for jobs outside of Penn State because of the continued harassment, threats, retaliation, and plagiarism of his work.

159. After interviews, Dr. Nassry decided to withdraw from job consideration in March 2020 as the Covid pandemic was expanding and the jobs would require relocation away from elderly family members.

160. On July 28, 2020, Dr. Nassry requested meeting with EMS Ombudsperson (Jose Fuentes)

161. Dr. Nassry spoke with EMS Ombudsperson over the phone on September 17, 2020, and Jose Fuentes encouraged Dr. Nassry to provide documentation of plagiarism to the Penn State Office of Research Protections (ORP).

162. Jose Fuentes said despite the threats of retaliation and comments about Denice Wardrop's friendship with Geography Department Head Cindy Brewer and EMS Dean Lee Kump, that the Department, College, and University took plagiarism seriously.

163. In the Fall of 2020, Dr. Nassry compiled documents, emails, and data files related to the research and publications in question, as well as consulting with senior Penn State faculty members regarding how his plagiarism concerns should be handled.

164. On January 7, 2021, Dr. Nassry requested a meeting with the Penn State Office of Research Protections to discuss issues related to plagiarism, and received a response with scheduling details from ORP staff member Sarah Matthews.

165. During a Zoom meeting with Courtney Karmelita and Kim Petrosky from the Penn State Office of Research Protections on January 11, 2021, Dr. Nassry provided an overview of the situation, they explained the process and timeline of investigation, and they stated that publishing someone else's data in tables and figures without acknowledgement of their contribution was plagiarism.

166. Dr. Nassry expressed his desire to have the investigation remain confidential until near the end of his employment (June 30) as he expected retaliation from Denice Wardrop, and potentially from the Geography Department Head Cindy Brewer and EMS Dean Lee Kump.

167. The work environment was already extremely difficult, and he wanted to avoid further harassment and confrontations with Denice Wardrop when she became aware of the investigation.

168. During a second Zoom meeting with Courtney Karmelita and Kim Petrosky from Office of Research Protections on February 19, 2021, Dr. Nassry expressed his concern about the timeline of the investigation.

169. Ms. Karmelita and Ms. Petrosky suggested Michael Nassry could delay submitting the report to decrease the amount of time he would be working at the University after

the report became known to Denice Wardrop, Department Head Cindy Brewer, and Dean Lee Kump.

170. As a result of this conversation, Dr. Nassry decided to wait until later in the semester to submit the report.

171. In addition, the Penn State ORP suggested Michael Nassry not inform his current supervisor (Trevor Birkenholtz) at his annual review meeting in March, but rather wait until he officially submitted the report as his conversation with Dr. Birkenholtz would not be confidential.

172. On March 1, 2021, Dr. Nassry informed the new Director of the Riparia research center (Trevor Birkenholtz) that he planned to leave Riparia and university in June but did not mention anything related to plagiarism, harassment, or retaliation at the suggestion of the Office of Research Protection.

173. In April 2021, the former director of Riparia, Dr. Brooks, became ill and passed away unexpectedly.

174. Because of the impact of this loss on Michael Nassry, the graduate students, and staff of Riparia, and out of respect for Rob Brooks' family, Dr. Nassry delayed submitting the ORP report until after his memorial services in June.

175. Prior to his last day working in the Riparia Research Center, in June 2021, a concerned fellow faculty member put Dr. Nassry in contact with a local attorney.

176. Dr. Nassry was told by the attorney that "Penn State is aware they have a problem with Denice Wardrop" and this attorney stated that he believed Denice Wardrop was a sociopath.

177. It was also the attorney's opinion Denice Wardrop would attack Dr. Nassry if he filed a report and said Denice Wardrop would either sue Dr. Nassry or "put dynamite under your car."

178. The attorney said they could not provide Dr. Nassry with legal advice, but they always advise their clients to get away from sociopaths like Denice Wardrop.

179. On June 30, 2021, Dr. Nassry's employment as full-time Research Professor and member of the Geography faculty ended, essentially as a constructive discharge.

180. Dr. Nassry began part time employment at Penn State on July 1, 2021 as advisor in the master's GIS program (Dutton Institute, EMS).

181. On September 16, 2021, Dr. Nassry submitted his complaint and documentation of plagiarism to the Penn State Office of Research Protection.

182. Dr. Nassry received a response via email on November 19, 2021 by the Penn State ORP which notified him that they would not open an investigation because his "concern doesn't fall under the purview" of their office and they would not share their assessment report with him.

183. During a Zoom meeting on December 8, 2021, the Penn State ORP informed Dr. Nassry they would not investigate because they believed Denice Wardrop had "implied consent" to publish his work due to prior collaborations.

184. The Penn State Office of Research Protection recommended to Dr. Nassry to file a report with his Department Head, Affirmative Action Office, and the Ethics and Compliance hotline.

185. Following the recommendation of the Penn State ORP, Michael Nassry requested a meeting with the new Geography Department Head, Affirmative Action Office, and Ethics and Compliance Office to file a report.

186. On December 17, 2021, Dr. Nassry received a return call from Mauricio Jimenez from the Penn State Office of Ethics and Compliance and provided him with a summary of his concerns regarding plagiarism, harassment, retaliation, and concerns about the misuse of budget funds.

187. On January 12, 2022, Dr. Nassry met with the Geography Department Head (Brian King) and Director of Riparia Trevor Birkenholtz and informed them of his concerns regarding plagiarism, harassment, retaliation, and potential misuse of budget funds.

188. They informed Michael Nassry that both Denice Wardrop and Sarah Chamberlain were no longer employed by the department and their change in employment was not due to any of his concerns.

189. Nevertheless, both Brian King and Trevor Birkenholtz claimed they never heard of "implied consent" to publish someone else's work, and during his communication with the ORP "implied consent" was not mentioned to Brian King as their reason to not open an investigation

190. After not receiving a response from an email in December, Michael Nassry followed-up with the Affirmative Action Office on January 14, 2022, to which they responded on January 19, 2022.

191. On January 21, 2022, Dr. Nassry had a Zoom meeting with AAO representative Carmen Borges.

192. Dr. Nassry submitted complaint form and summary of concerns to AAO on February 27, 2022, and additional documentation and emails to AAO on March 29, 2022.

193. After several months of hearing nothing, on July 19, 2022, during an in-person meeting with the Penn State AAO on the Penn State University Park Campus, Carmen Borges stated she talked with new department head (Brian King) and new research center director (Trevor Birkenholtz) with the following salient points:

- Brian King told Carmen Borges he "knows what Denice is about" and he's looking into issues as Denice Wardrop is employed by the Dutton Institute under the Department of Geography;
- Both Brian King and Trevor Birkenholtz don't understand why the Penn State ORP refused to open an investigation into plagiarism; and
- The Penn State AAO office did not want to see additional documentation from Michael Nassry and planned to talk to Denice Wardrop but not with Sarah Chamberlain.

194. In summation, the AAO office said they doubted they could do anything, and Dr. Nassry should have contacted Human Resources instead of the EMS Ombudsperson, Office of Research Protection, Office of Ethics and Compliance, and the Affirmative Action Office.

**Facts Related to Misuse of Budgetary Funds Whistleblowing**

195. In August of 2018, Dr. Nassry noticed charges on a budget for a project funded by the EPA being directed to support Denice Wardrop's salary.

196. In September of 2018, Dr. Nassry asked her about the charges as he was the project PI (primary investigator) and she was not working on the project.

197. When confronted by Dr. Nassry, she claimed she was not being paid from that budget.

198. Not believing her denials, Dr. Nassry then met with the contract specialist and asked about the charges and he was told these had in fact been directed to Denice Wardrop's salary.

199. Upon further investigation, Dr. Nassry noticed several charges on the budget to support both Sarah Chamberlain's and Denice Wardrop's salaries.

200. As most of the project was left to be completed and minimal funds remained, Dr. Nassry again asked Denice Wardrop about the lack of remaining funds to support work and she responded "well that's your problem now."

201. In another instance, on October 29, 2020, Denice Wardrop requested budget and contract numbers from Dr. Nassry after he agreed to provide wage support for Hannah Ingram for data analysis on an EPA project.

202. Dr. Nassry provided the information to Denice Wardrop via email.

203. Dr. Nassry was later notified that Denice Wardrop attempted to pay for travel which occurred months earlier and not related to the EPA project using the budget numbers he had provided.

204. Dr. Nassry only became aware because administrative staff flagged Denice Wardrop's request due to the fact Dr. Nassry received a contract modification to reclassify travel funds to salary-only funds after Covid restricted the planned workshop to a virtual setting.

**Facts Related to Reporting Multiple Issues (Including the Misues of Funds) and Retaliation**

205. On April 14, 2017, Dr. Nassry reported the publication of his work immediately after learning about the article at a Riparia research center group meeting

206. Michael Nassry requested Denice Wardrop address gender-based plagiarism on April 25, 2017, after which. Denice Wardrop apologized, admitting Jessica Moon copied Dr. Nassry's work, and promise action.

207. Denice Wardrop took no further action.

208. On April 2, 2018, Dr. Nassry requested Denice Wardrop address gender-based discriminatory plagiarism at annual review meeting.

209. On November 14, 2018, Dr. Nassry reported Sarah Chamberlain's harassment to Denice Wardrop that occurred the previous evening at a professional conference in Cooperstown, NY.

210. On February 4, 2019, Dr. Nassry reported Sarah Chamberlain's sexual harassment to Denice Wardrop that occurred the same day at a PA Department of Environmental Protection workshop held at the Penn Stater Conference Center in State College, PA.

211. Dr. Nassry informed Denice Wardrop on April 22, 2019 that Sarah Chamberlain's continued sexual harassment is the reason he would not attend future professional conferences with the group.

212. Several days later, on April 28, 2019, Dr. Nassry requested Denice Wardrop address Sarah Chamberlain's harassment at the annual review meeting and he followed it up again on May 28, 2019.

213. Ms. Wardrop never did so.

214. On May 1, 2019, Dr. Nassry requested a meeting with the Penn State College of Earth and Mineral Sciences Ombudsperson (email) - Jose Fuentes.

215. In a November 19, 2019 email, Dr. Nassry requested Denice Wardrop address plagiarism prior to additional collaboration with co-authors and in a November 26, 2019 in-person meeting, requested Denice Wardrop address plagiarism and harassment.

216. Once again, Ms. Wardrop failed to do so.

217. On July 28, 2020, Dr. Nassry requested a meeting with Penn State College of Earth and Mineral Sciences Ombudsperson Jose Fuentes to discuss how to handle the sexual harassment by an older co-worker and the plagiarism of his research products and requested it again on September 11, 2020.

218. On August 21, 2020, Michael Nassry requested meeting with Geography Department Head Cindy Brewer to discuss the amount of unpaid service work assignments he was receiving.

219. Geography Department Head Cindy Brewer did not respond to his meeting request.

220. On September 17, 2020, Dr.. Nassry reported harassment, plagiarism, retaliation, and concerns about the misuse of budget funds relating to Denice Wardrop's allocation of research funds and her billing of projects she did not participate in the Penn State College of Earth and Mineral Sciences Ombudsperson Jose Fuentes.

221. On January 7, 2021, Dr. Nassry requested a meeting with the Penn State Office of Research Protection and during the meeting on January 11, 2021 (Zoom) Kim Petrosky and Courtney Karmelita, Dr. Nassry reported plagiarism, harassment, and retaliation.

222. During a follow-up Zoom meeting on February 19, 2021 with Penn State Office of Research Protection members Kim Petrosky and Courtney Karmelita, Dr. Nassry requested guidance on reporting to avoid additional retaliation, harassment, and threats.

223. On March 16, 2021, Dr. Nassry informed the new Director of Riparia that his resignation was the result of Denice Wardrop and Sarah Chamberlain, but another Penn State office recommended Michael Nassry not provide additional details at that time.

224. On September 16, 2021, Dr. Nassry provided 15 documents to the Penn State Office of Research Protection to initiate investigation.

225, Dr. Nassry provided additional information to the Penn State Office of Research Protection, Kim Petrosky, on October 11, 2021.

226. The Penn State Office of Research Protections declined to open investigation on November 19, 2021.

227. On December 8, 2021, Dr. Nassry met with Penn State Office of Research Protection by Zoom, Candy Yekel and Courtney Karmelita, and repeated his concerns regarding plagiarism, harassment, and retaliation.

228. On December 10, 2021, Dr. Nassry requested a meeting with the Penn State Affirmative Action Office but received no response.

229. On December 10, 2021, Dr. Nassry requested a meeting with the Penn State Ethics and Compliance office by an on-line form.

230. On December 14, 2021, Dr. Nassry requested a meeting with the new Geography Department Head, Brian King, who requested the meeting occur in January due to his schedule.

231. Michael Nassry reported his concerns about plagiarism, harassment, retaliation, and the potential misuse of budget funds to the Penn State Office of Ethics and Compliance over the phone to Mauricio Jimenez on December 17, 2021.

232. On January 12, 2022, Dr. Nassry reported plagiarism, harassment, retaliation, and the potential misuse of budget funds by Denice Wardrop to the new Geography Department Head Brian King and new Riparia Director Trevor Birkenholtz.

233. On January 14, 2022, Dr. Nassry again requested a meeting with the Penn State Affirmative Action Office with no response.

234. Michael Nassry provided an update on January 15, 2022 of reporting to the Penn State Office of Ethics and Compliance, Mauricio Jimenez.

235. After finally receiving a response, on January 21, 2022, Dr. Nassry reported plagiarism, harassment, retaliation, and the potential misuse of budget funds to Carmen Borges of the Penn State Affirmative Action Office via Zoom.

236. As a follow up, on February 27, 2022, Dr. Nassry submitted an online form to the Penn State Affirmative Action Office.

237. On May 2, 2022, Mauricio Jiminez of the Penn State Office of Ethics and Complianceinformed Dr. Nassry they were closing the case in their office, and the following day, instructed Dr. Nassry to send all additional documentation to the Penn State AAO, which he did on May 13, 2022 and again on May 23, 2022.

238. On July 7, 2022, Carmen Borges of the Penn State Affirmative Action Office informed Dr. Nassry they did not need additional information.

239. On July 19, 2022, Dr. Nassry provided additional details to the Penn State Affirmative Action Office in an in-person meeting with Carmen Borges with the following points made at the meeting:

- Brian King told Carmen Borges he "knows what Denice is about" and he's looking into issues as Denice Wardrop is employed by the Dutton Institute under the Department of Geography;
- Carmen Borges said she wouldn't be surprised if Brian King took action;
- Trevor Birkenholtz claimed to not know anything about Denice Wardrop;
- Both Brian King and Trevor Birkenholtz believe Michael Nassry and respect him;
- Both Brian King and Trevor Birkenholtz don't understand why the Penn State ORP refused to open an investigation into plagiarism;
- The Penn State AAO office did not want to see additional documentation from Michael Nassry and planned to talk to Denice Wardrop but not with Sarah Chamberlain; and
- AAO office said they doubt they can do anything, and Dr. Nassry should have contacted Human Resources instead of the EMS Ombudsperson, Office of Research Protection, Office of Ethics and Compliance, and the Affirmative Action Office.

**<u>Facts Related to Forced Resignation/Constructive Discharge as a Result of Retaliation</u>**

240. In January of 2021, as a direct result of the repeated plagiarism, harassment, threats, and retaliation from Denice Wardrop and others of the named Defendants, Dr. Nassry made the decision to resign his position.

241. On Monday, February 15, 2021, Dr. Nassry received a reminder from Department of Geography to complete the annual performance review and meet with his supervisor to go over the document.

242. On February 17, 2021, Dr. Nassry requested a meeting with the Office of Research Protections to ask what could be shared with the new director during the annual performance review, specifically if he should share that his decision to resign was a direct result of the repeated plagiarism, harassment, threats, and retaliation from Denice Wardrop and others.

243. On February 19, 2021, Dr. Nassry met via Zoom with Courtney Karmelita and Kim Petrosky from the Office of Research Protections who recommended he not share any information about the reasons he was forced to resign with his current supervisor because his current supervisor would not be bound by the same confidentiality rules as the Penn State ORP.

244. This recommendation was based on Dr. Nassry's fear of retaliation from Denice Wardrop due to her previous actions and repeated threats.

245. Michael Nassry met with the new director of Riparia, Trevor Birkenholtz on March 1, 2021, and informed him he planned to resign from Penn State at the end of his current contract on June 30, 2021 to "pursue other opportunities".

246. In follow-up emails on March 15 and 16, 2021, Dr. Nassry confirmed to Trevor Birkenholtz that he planned to leave Penn State on June 30, 2021 and that this decision was not funding related.

247. Dr. Nassry requested Trevor Birkenholtz to not share their discussion with Denice Wardrop.

248. During a follow-up phone call Michael Nassry informed Trevor Birkenholtz that another university office recommended he not share additional details about his reason for resigning with him at this time but that it was related to the actions of Denice Wardrop and Sarah Chamberlain.

249. On April 5, 2021, Michael Nassry received a separation letter from the Department of Geography's Administrative Manager, Denise Kloehr.

250. Dr. Nassry remained in his full-time position until June 30, 2021 at which time his employment was terminated, and he began his employment as a part-time remote graduate student advisor.

251. When Denice Wardrop became Dr. Nassry's supervisor, his salary started to decline as she used her influence to isolate him from research and teaching opportunities for supplemental pay.

252. In 2018, when Denice Wardrop became his supervisor, he earned $75,875.00.

253. In 2019, Dr. Nassry earned $76,948.00

254. In 2020, as a result of Denice Wardrop's retaliation, Dr. Nassry's salary dropped to $70,072.00

255. In 2021, from January through June, Dr. Nassry only earned $32, 421.00 which was a full year projection of $64,842.00

256. In 2022, as a result of the harassment, discrimination and retaliation, Dr. Nassry only earned less than $10,000.00.

257. In addition, in 2019, Denice Wardrop blocked Dr. Nassry from a job which would hav earned him approximately $100,000.00.

258. During his tenure at Penn State, Dr. Nassry accumulated extensive favorable work appraisals, and was in fact repeatedly singled out for praise and distinction for his service, earning him steady salary increases over the years until he was discriminated and retaliated against.

259. Dr. Nassry's final termination on December 31, 2021 resulted from intentional discrimination and retaliation, particularly Defendants Chamberlain and Wardrop and was ratified by Defendant Penn State and its management, particularly Defendants Jones, Kump, and Brewer.

260. Specifically, Dr. Nassry was the victim of persistent discrimination, harassment, and retaliation on the basis of his gender and his whistle-blowing activities.

**COUNT I**

**VIOLATION OF TITLE VII—GENDER DISCRIMINATION AND RETALIATION 42 U.S.C. §2000, *et seq* (AGAINST ALL DEFENDANTS)**

261. Plaintiff hereby incorporates by reference paragraphs 1 through 260 above as though fully set forth herein.

262. By the actions of its employees and management, which are set forth in the preceding paragraphs of this complaint, Penn State and the other Defendants unlawfully discriminated against Dr. Nassry on the basis of gender/sex in the terms and conditions of his employment by discriminating against him by treating him differently and worse on the basis of gender, retaliating against him for complaining about gender discrimination and sexual harassment, and ultimately constructively discharging him in retaliation for his complaint of gender discrimination and harassment, all of which are in violation of Title VII, 42 U.S.C. §2000, et seq.

263. As a direct and proximate result of Defendants' violation of Title VII, 42 U.S.C. §2000, et seq., Dr. Nassry has suffered, and continues to suffer, great harm in the form of, among other things, past and future pecuniary losses, emotional pain and suffering, and loss of enjoyment of life.

264. As a result of the Defendants' violation of Title VII, Plaintiff is entitled to additional statutory liquidated damages and an award of attorneys' fees.

## COUNT II

## VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT (PHRA) 43 P.S. §§955 *et seq.* (AGAINST ALL DEFENDANTS)

265. Plaintiff hereby incorporates by reference paragraphs 1 through 264 above as though fully set forth herein.

266. The PHRA prohibits discrimination and retaliation against individuals on the basis of gender.

267. Defendants violated the provisions of the Pennsylvania Human Relations Act, 43 P.S. §§955 *et seq.*, in that they discriminated and retaliated against Plaintiff on account of his gender.

268. As a direct and proximate result of Defendants' violation of PHRA, Dr. Nassry has suffered, and continues to suffer, great harm in the form of, among other things, past and future pecuniary losses, emotional pain and suffering, and loss of enjoyment of life.

269. As a result of the Defendants' violation of Title VII, Plaintiff is entitled to additional statutory liquidated damages and an award of attorneys' fees.

## COUNT III

## Violation of the Pennsylvania Whistleblower Law – Retaliation (Against Penn State) 43 P.S. §§ 1421, *et seq.*

270. Plaintiff hereby incorporates by reference the averments contained in Paragraphs 1 through 269, as if set forth fully herein.

259. The University is classified as a "public body" under the Pennsylvania Whistleblower Law because the University receives compensation from the Commonwealth of Pennsylvania. See 43 P.S. § 1422 (specifying that a "public body" is any entity "which is funded in any amount by or through Commonwealth or political subdivision authority or a member or employee of that body.")

260. At all pertinent times Dr. Nassry was employed by Penn State.

261. As set forth in the preceding paragraphs, the actions of Denice Wardrup and Sarah Chamberlain violated the well-established laws of this Commonwealth.

262. Specifically, Sarah Chamberlain and Denice Wardrup misused and misappropriated public funds for their own personal benefit and gain.

263. Dr. Nassry discovered the actions of both Sarah Chamberlain and Denice Wardrup and reported them to the University.

264. The University failed to take any actions against Sarah Chamberlain and Denice Wardrup during the time of Dr. Nassry's employment with Penn State.

265. In fact, it was Dr. Nassry who suffered the consequences of reporting the misuse and misappropriation, receiving retaliation ultimately culminating in his constructive discharge.

266. Nevertheless, after Dr. Nassry left Penn State, he learned in December 2022 that Denise Wardrop' s mishandling of the budget was shared with the department head who reviewed this matter and based on his review and other administrative concerns, the University has announced that Denise Wardrop will no longer be a Penn State employee as of July 1, 2023.

267. Dr. Nassry has filed this suit within the 180-day time period for filing a civil action arising from a violation of the Pennsylvania Whistleblower Law. See 43 P.S. § 1424(a).

268. In violation of the Pennsylvania Whistleblower Law, 43 P.S. §§ 1421, *et seq*., the University retaliated against Dr. Nassry (i) for his refusal to violate the well-established law of this Commonwealth and (ii) for his decision to report to Penn State management his unwillingness to violate the law and to acquiesce to the wrongdoing of Denice Wardrup and Sarah Chamberlain.

269. By the systematic actions of its supervisors and management, which are set forth in the preceding paragraphs of this complaint, Penn State violated the Pennsylvania Whistleblower Law, 43 P.S. §§ 1421, *et seq*., by and through the adverse employment actions taken against Dr. Nassry.

270. Specifically, because Dr. Nassry became aware of the violations the well-established law of this Commonwealth (and reported this to University administation), NES constructively terminated Dr. Nassry employment in retaliation. See 43 P.S. § 1423(a).

271. The willful actions of Penn State and its employees in violating the mandates of the Pennsylvania Whistleblower Law by retaliating against Dr. Nassry, are a smaller component of a larger pattern of University policies and practices that endanger the public welfare; as such, the University's decision to retaliate against Dr. Nassry is precisely the type of behavior that the Pennsylvania Whistleblower Law was enacted to curtail.

272. As a direct and proximate result of Penn State's violation of the Pennsylvania Whistleblower Law, 43 P.S. §§ 1421, *et seq*., Dr. Nassry has suffered, and continues to suffer, great harm in the form of, among other things, past and future pecuniary losses, emotional pain and suffering, humiliation, and a loss of life's pleasures.

273. As a result of the willful and unlawful actions of NES in violation of the Pennsylvania Whistleblower Law, 43 P.S. §§ 1421, *et seq*., Dr. Nassry has been caused to suffer a severe loss of professional status and reputation in the community of his peers, serious losses of

pay, benefits and other employee remunerations, and an underserved and painful diminution of his ability to provide himself and his family with the earned rewards of excellence in his career.

274. As a result of the Defendants' violation of the Pennsylvania Whistleblower Law, 43 P.S. §§ 1421, *et seq.*, Plaintiff is entitled to additional statutory liquidated damages and an award of attorneys' fees.

**COUNT IV**

**<u>Wrongful Termination – Violation of Public Policy (Against Penn State)</u>**

275. Plaintiff hereby incorporates by reference the averments contained in Paragraphs 1 through 274, as if set forth fully herein.

276. As set forth in the preceding paragraphs, the University is classified as a "public body" under 43 P.S. § 1422, as a public supported educational institution.

277. Because Penn State constructively terminated Dr. Nassry's employment for his reporting of plagiarism, harassment, retaliation, and the potential misuse of budget funds in violation of federal and Pennsylvania law, the public policy exception applies to the situation described in the preceding paragraphs and gives rise to a cause of action for wrongful termination.

278. The willful actions of Penn State and its employees in violating the mandates of the Pennsylvania Whistleblower Law by retaliating against Dr. Nassry, are a smaller component of a larger pattern of University policies and practices that endanger the public welfare; as such, the University's decision to retaliate against Dr. Nassry is precisely the type of behavior that the Pennsylvania Whistleblower Law was enacted to curtail.

279. As a direct and proximate result of Penn State's violation of the Pennsylvania Whistleblower Law, 43 P.S. §§ 1421, *et seq.*, Dr. Nassry has suffered, and continues to suffer,

great harm in the form of, among other things, past and future pecuniary losses, emotional pain and suffering, humiliation, and a loss of life's pleasures.

280. As a result of the willful and unlawful actions of NES in violation of the Pennsylvania Whistleblower Law, 43 P.S. §§ 1421, *et seq*., Dr. Nassry has been caused to suffer a severe loss of professional status and reputation in the community of his peers, serious losses of pay, benefits and other employee remunerations, and an underserved and painful diminution of his ability to provide himself and his family with the earned rewards of excellence in his career.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Michael Nassry demands judgment in his favor and against Defendants as follows:

(a) Enter a declaratory judgment that the Defendants' acts, policies, practices and procedures complained of herein have violated and continue to violate the rights of the Plaintiff as secured to him by federal and state legislative enactments;

(b) Require the Defendant Penn State to return the Plaintiff to a comparable position prior to the discrimination, and to give the Plaintiff full wages and benefits commensurate with that position;

(c) Award to the Plaintiff past and future damages for loss of income, growth opportunities and all benefits denied him due to the improper and unlawful actions of the Defendant;

(d) Award to the Plaintiff damages in compensation for his emotional distress, humiliation, loss of reputation and status in the community of his peers, and the loss of his ability

to provide himself and his family with the rewards of his years of excellence in his chosen occupation;

(e) Award to the Plaintiff compensatory damages for Plaintiff's emotional distress, humiliation and the loss of life's pleasures;

(f) Grant to the Plaintiff liquidated damages as allowed pursuant to Title VII and the Pennsylvania Whistleblower Law;

(g) Grant to the Plaintiff costs, disbursements and reasonable attorneys' fees as allowed under Title VII and the Pennsylvania Whistleblower Law;

(h) To enter a declaratory judgment that Defendant's acts, policies, practices and procedures complained of herein have violated and continue to violate the rights of Plaintiff as secured to him by the Pennsylvania Whistleblower Law;

(i) Grant to the Plaintiff such additional relief as the Court deems necessary and proper under the circumstances.

Respectfully submitted,

JOHN M. HAMPTON ESQ. - Atty. I.D. 69683
Attorney for Plaintiff Michael Nassry
1022 Centre Street
Ashland, PA 17921
(570)-875-4444 - John@johnhamptonlaw.com

ARTHUR D. GOLDMAN, ESQUIRE
By: Arthur D. Goldman, Esquire
Attorney I.D. No. 56983
Attorney for Plaintiff Michael Nassry
P.O. Box 115
Paoli, PA 19301

Dated: January 26, 2023

**CERTIFICATION**

I, John Hampton, Esquire, attorney for Plaintiff Michael Nassry, pursuant to 28 U.S.C. §1746, herby certify under penalty of perjury under the laws of the United States of America that the foregoing Complaint is true and correct to the best of my knowledge, information and belief.

Dated: January 26, 2023

John Hampton Esq.