IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL QUINN NASSRY, | : | |
| | : | Case No. 4:23-cv-00148-MWB |
| Plaintiff, | : | |
| v. | : | Chief Judge Matthew W. |
| | : | Brann |
| THE PENNSYLVANIA STATE | : | |
| UNIVERSITY, NICHOLAS P. | : | Complaint filed: 1/27/2023 |
| JONES, LEE KUMP, CYNTHIA | : | |
| BREWER, AND DENICE | : | |
| WARDROP, | : | *Electronically Filed* |
| | : | |
| Defendants. | : | |

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT, PER FED. R. CIV. P. 12(b)(6)**

Philip K. Miles III, Esquire
Pa. I.D. No. 209425
pkmiles@mqblaw.com
McQUAIDE BLASKO, INC.
811 University Drive
State College, PA 16801
(814) 235-2222
Fax: (814) 234-5620

Attorneys for Defendants

Dated: April 24, 2023

# **TABLE OF CONTENTS**

**Page(s)**

*Table of Authorities*.............................................................................. ii

I.  Procedural History and Introduction .............................................1

II.  Statement of Facts ...........................................................................3

    A. Overall Narrative .........................................................................3

    B.  Individual Defendants Jones, Kump, and Brewer ...........................7

III. Questions Presented .......................................................................8

IV. Argument .........................................................................................9

    A. Standard of Review ......................................................................9

    B.  Count I – Title VII Against All Defendants - Nassry's administrative charges are blatantly untimely based on the plain language of the Amended Complaint ..................................10

    C. Count II – PHRA Against All Defendants ......................................12

        1.  The PHRC charge is clearly untimely under the shortened 180-day filing requirement...........................................12

        2.  The claims against the individual defendants fail to set forth plausible causes of action and are untimely....................13

    D. Count III – Whistleblower Retaliation Against Penn State ...........15

    E.  Count IV – Wrongful Termination in Violation of Public Policy Against Penn State - Nassry has not identified the requisite clear mandate of public policy,  other than possibly legislation with statutory remedies, which preempts a common law wrongful termination claim..............................................................17

V. Conclusion......................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................................... 9, 10

*Clay v. Advanced Comput. Applications, Inc.*, 522 Pa. 86, 559 A.2d 917 (Pa. 1989) ........... 20

*Connelly v. Lane Const. Corp.*, 809 F.3d 780 (3d Cir. 2016) .................................................... 9

*DiFiore v. CSL Behring, LLC*, 879 F.3d 71 (3d Cir. 2018) ...................................................... 10

*Eaves-Voyles v. Almost Family, Inc.*, 198 F. Supp. 3d 403 (M.D. Pa. 2016) ......................... 17

*Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107 (3d Cir. 2003) .......................................... 18

*Gillispie v. RegionalCare Hosp. Partners Inc.*, 892 F.3d 585 (3d Cir. 2018) ........................ 18

*Golaschevsky v. Dep't of Envtl. Prot.*, 554 Pa. 157, 720 A.2d 757 (Pa. 1998) ...................... 16

*Helpin v. Trustees of the Univ. of Pennsylvania*, 969 A.2d 601 (Pa. Super. Ct. 2009), aff'd, 10 A.3d 267 (Pa. 2010) .......................................................................................................... 10

*Holocheck v. Luzerne Cty. Head Start, Inc.*, 385 F. Supp. 2d 491 (M.D. Pa. 2005).............. 13

*Jacques v. AKZO Int'l Salt, Inc.*, 422 Pa.Super. 419, 619 A.2d 748 (Pa. Super. Ct. 1993) ... 18

*Johnston v N Braddock Borough*, 2020 U.S. Dist. LEXIS 163094, 2020 WL 6730889  (W.D. Pa. Sept. 3, 2020) ............................................................................................................................... 18

*Kent v. Keystone Human Servs.*, 68 F.Supp. 3d 565 (MD. Pa. 2014) ..................................... 18

*Kroen v. Bedway Sec. Agency, Inc.*, 633 A.2d 628 (Pa. Super. Ct. 1993) .............................. 10

*McDonald v. SEIU Healthcare Pa.*, No. 1:13-CV-2555, 2014 U.S. Dist. LEXIS 130670 (M.D. Pa. Sept. 18, 2014) ............................................................................................................................... 12

*McLaughlin v. Gastrointestinal Specialists, Inc.*, 750 A.2d 283 (Pa. 2000)........................... 17

*Ortiz v. Priority Healthcare Grp., LLC*, 2019 U.S. Dist. LEXIS 120044, 2019 WL 3240016 (M.D. Pa. Jul. 18, 2019) ...................................................................................................................... 18

*Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394 (3d Cir. 1976)........................................... 20

*Phillips v. Cnty. of Allegheny*, 515 F.3d 224 (3d Cir. 2008) ..................................................... 9

*Preobrazhenskaya v. Mercy Hall Infirmary*, 71 F. App'x 936 (3d Cir. 2003)........................ 18

*Smith v. Calgon Carbon Corp.*, 917 F.2d 1338 (3d Cir. 1990) ............................................... 17

*Thompson v. Real Estate Mortg. Network*, 748 F.3d 142 (3d Cir. 2014) ............................... 10

*Wiest v. Tyco Electronics Corp.*, 812 F.3d 319 (3d Cir. 2016) ............................................... 11

*Wolk v. Saks Fifth Ave., Inc.*, 728 F.2d 221 (3d Cir. 1984) .................................................... 18

*Zysk v. FFE Minerals USA, Inc.*, 225 F. Supp. 2d 482 (E.D. Pa. 2001) ................................ 12

## Statutes

42 U.S.C. § 2000 ........................................................................................................................ 1

43 P.S. § 1421 ....................................................................................................................... 1, 15

43 P.S. § 1424 .......................................................................................................................... 15

43 P.S. § 955 .............................................................................................................................. 1

43 P.S. § 955(e) ........................................................................................................................ 13

43 P.S. § 959(h) ....................................................................................................................... 12

## I. Procedural History and Introduction

Plaintiff Michael Quinn Nassry initiated this action by filing his Complaint on January 27, 2023.[1] He asserted claims of disparate treatment discrimination (inappropriately blended with harassment and retaliation) under Title VII[2] and the Pennsylvania Human Relations Act ("PHRA")[3] against Defendants The Pennsylvania State University ("Penn State"), Nicholas P. Jones, Lee Kump, Cynthia Brewer, Denice Wardrop, and Sarah Chamberlain.[4] Nassry further raised claims of Pennsylvania Whistleblower Law[5] retaliation and wrongful termination in violation of public policy against only Penn State.[6] All of the defendants moved for dismissal of the Complaint and concurrently filed a motion and supporting brief.[7]

In response, Nassry filed an Amended Complaint on April 10, 2023,[8] making only superficial amendments to the factual allegations, but also:

- Removing the individual defendants from the Title VII claim (presumably because Title VII does not permit individual liability against employees of a defendant-employer);

---

[1] Pl.'s Compl., ECF No. 1.

[2] Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, *et seq.*

[3] 43 P.S. § 955, *et seq.*

[4] ECF No. 1, Counts I and II, pp. 38-39.

[5] 43 P.S. § 1421, *et seq.*

[6] ECF No. 1, Counts III and IV, pp. 39-43.

[7] ECF Nos. 11-12.

[8] Pl.'s Am. Compl., ECF No. 15

- Removing Sarah Chamberlain from both the Title VII claim and the PHRA claim (presumably because the allegations against her were untimely and she was not a supervisory employee, which is necessary for individual liability under the PHRA); and
- Removing references to the Whistleblower Law in the claim for wrongful termination in violation of public policy (presumably because the Whistleblower Law would preempt such a cause of action).

Defendants now concurrently file a motion to dismiss the Amended

Complaint in its entirety and this brief in support. The Amended

Complaint should be dismissed because:

- It is clear on the face of the Amended Complaint that the claims under Title VII, the PHRA, and the Whistleblower Law are all untimely;

- The factual allegations against the individual defendants are insufficient to state a plausible cause of action under the PHRA;

- The factual allegations are insufficient to state a plausible cause of action under the Pennsylvania Whistleblower Law; and

- The claim for wrongful termination in violation of public policy fails to identify a "public policy" as that phrase is contemplated under Pennsylvania tort law.

Defendants respectfully request that this Court dismiss Nassry's Amended

Complaint in its entirety with prejudice.

## II. Statement of Facts[9]

### A. Overall Narrative

The sprawling 45-page Amended Complaint is long on irrelevant bad-mouthing and short on relevant facts supporting a coherent narrative to state plausible causes of action. The story apparently begins with Chamberlain "sexually harassing" Nassry. The facts that are supposed to support this conclusory label are that Chamberlain allegedly:

- Held meetings in a bar ***in the Fall of 2016*** and did not want to discuss grant proposals.[10]
- Invited Nassry to dinner ***in October 2016***.[11]
- Called and texted Nassry ***in Spring 2017*** to request contact information that Nassry believed she already had.[12]
- Cried to another professor about Nassry blocking her phone (not clear but presumably around Spring 2017).[13]
- "[L]oudly disparage[ed]" Nassry at a conference ***on November 13, 2018***.[14]
- Asked attendees at a workshop ***in February 2019*** to sit with her instead of Nassry.[15]

---

[9] At this stage, and under the standard of review described in Section IV, the facts as alleged are presumed true. Defendants are neither admitting nor denying the facts, but rather reciting the allegations given the applicable presumption.

[10] ECF No. 15, ¶ 51.

[11] *Id.,* ¶ 52.

[12] *Id.,* ¶ 53.

[13] *Id.,* ¶ 55.

[14] *Id.,* ¶ 61.

[15] *Id.,* ¶ 73-74.

The Amended Complaint does not appear to allege any further "sexual harassment" (setting aside that the conduct above does not meet the legal definition of sexual harassment) by Chamberlain.

The Amended Complaint then turns to a series of internal complaints, that Nassry alleges did not result in Penn State taking satisfactory (to him) action. Nassry made the decision to resign in January of 2021.[16] On March 16, 2021, Nassry gave notice to Penn State of his resignation, effective June 30, 2021.[17] Nassry continued to work remotely, however, to advise a graduate student until December 31, 2021.[18]

In a separate thread, Nassry claims he produced a series of calculations in 2013 and 2016, which were relied upon without attribution in a publication in 2017 and again in a presentation in 2018.[19] Nassry apparently ties his complaints about this alleged "plagiarism" to his unsuccessful applications to positions at Penn State in 2019.[20] Nassry was again not satisfied with the response to his internal complaints. The section regarding

---

[16] *Id.,* ¶ 240.
[17] ECF No. 15, ¶¶ 95-97.
[18] *Id.,* ¶ 97.
[19] *Id.,* ¶¶ 111-132.
[20] *Id.,* ¶ 257.

the alleged "plagiarism" apparently also ties to his claim for wrongful termination in violation of public policy - notwithstanding that he has not alleged that Pennsylvania has the requisite "public policy" (given its legal meaning in this context) against plagiarism. Nassry also contends the plagiarism ties into "gender discrimination," presumably because the people involved were women, and the authors on the article allegedly using his data are women.

In 2019, Nassry was a finalist for the Director of the Penn State Water Faculty Consortium position.[21] Wardrop served on the final interview committee for the position and allegedly "warned" Nassry that there would be "consequences" – but the Complaint is unclear as to consequences *for what*?[22] Wardrop met with Nassry about his plagiarism allegations, and she allegedly informed him that she did not believe plagiarism occurred, and Brewer and Kump were "on her side."[23] Again, it is difficult to follow the rambling narrative and know which job Nassry is referencing, but Nassry "decided to withdraw from job consideration in

---

[21] *Id.,* ¶ 142.

[22] *Id.,* ¶ 152.

[23] ECF No. 15, ¶ 158.

March 2020 as the Covid pandemic was expanding and the jobs would require relocation away from elderly family members."[24] Nassry, once again cryptically, refers to Wardrop "block[ing]" him from a job, and "us[ing] her influence to isolate him from research and teaching opportunities for supplemental pay."[25]

Finally, Nassry alleges minimal (relevant) facts in support of his whistleblower claim. He appears to contend that he raised issues with project funds being used to support Wardrop's salary in August and September of 2018. He further alleges that he became aware that Wardrop attempted to pay for travel with an inappropriate budget code in or around October 2020.[26] It is not clear what other protected activity Nassry is attempting to utilize in his whistleblower retaliation claims. He devotes another subsection to reporting plagiarism, discrimination, and budget misuse from 2017, through the date of his resignation in 2021, and

---

[24] *Id.,* ¶ 159 (it is unclear whether he means the jobs outside of Penn State or the Director of the Penn State Water Faculty Consortium position).
[25] *Id.,* ¶¶ 251-257.
[26] *Id.,* ¶¶ 201-203.

subsequently until July 2022.[27] It is unclear how these reports tie to his decision to resign.

Nassry filed charges with the EEOC and PHRC on October 3, 2022, which were summarily dismissed with a Right to Sue Letter in less than three weeks.[28]

### B. Individual Defendants Jones, Kump, and Brewer

Jones, Kump, and Brewer allegedly "ratified" Nassry's "final termination on December 31, 2021."[29] In this context, where Nassry *resigned* nine months earlier, it is unclear what this even means. The only remaining allegations involving these three are that Jones removed Wardrop from her position,[30] Kump approved Chamberlain's promotion to Associate Research Professor in 2019,[31] and Brewer did not respond to a 2020 email from Nassry requesting an opportunity to discuss the amount of unpaid service work he was doing.[32]

---

[27] *Id.,* ¶¶ 205-239.
[28] It is extraordinarily unusual for an agency to dismiss a charge so rapidly, and although it is not entirely clear, this was presumably due to the blatant untimeliness of the charge.
[29] ECF No. 15, ¶ 259
[30] *Id.,* ¶ 136.
[31] *Id.,* ¶ 70.
[32] *Id.,*  ¶¶ 218-19.

## III. Questions Presented

1. A Title VII claimant must initiate a charge with the EEOC within 300 days. Here, Nassry initiated his charge more than 300 days after the alleged conduct giving rise to his claims occurred. Should this Court dismiss Nassry's Count I under Title VII as time barred?

   (Suggested Answer: **Yes**).

2. A PHRA claimant must initiate a charge with the PHRC within 180 days. Here, Nassry initiated his charge more than 180 days after the alleged conduct giving rise to his claims occurred. Should this Court dismiss Nassry's Count II under the PHRA as time barred?

   (Suggested Answer: **Yes**).

3. Although the PHRA allows a cause of action against individual supervisory employees who aid and abet discrimination, Nassry has failed to plead facts supporting a plausible cause of action against any of the individual defendants. Should this Court dismiss Nassry's Count II under the PHRA as to the individual defendants?

   (Suggested Answer: **Yes**).

4. The Pennsylvania Whistleblower Law has a 180-day statute of limitations for retaliation claims and Nassry has failed to plead any retaliatory conduct occurring within the 180 days preceding the filing of his Complaint. Should this Court dismiss Nassry's Count III for whistleblower retaliation?

   (Suggested Answer: **Yes**).

5. A claim for whistleblower retaliation requires a causal connection between protected activity and an adverse action. Here, Nassry has failed to plead facts establishing such a connection with regard to any timely retaliatory act. Should this Court dismiss Nassry's Count III for whistleblower retaliation?

   (Suggested Answer: **Yes**).

6. Under Pennsylvania law, a claim for wrongful termination in violation of public policy requires a clear mandate of public policy (e.g., legislation, constitutional provision, regulation) but such a claim is preempted where legislation creates a statutory remedy. Here, Nassry has failed to plead any clear mandate of public policy that does not include a statutory remedy. Should this Court dismiss Count IV for wrongful termination in violation of public policy?

(Suggested Answer: **Yes**).

## IV. Argument

### A. Standard of Review

A court may dismiss a complaint, in whole or in part, under Federal Rule of Civil Procedure 12(b)(6) where the complaint fails to state a claim upon which relief can be granted.[33] When considering a motion to dismiss, a court must "accept as true all factual allegations in the complaint and draw all inferences from the facts alleged in the light most favorable to [the plaintiff];"[34] and disregard legal conclusions.[35] A detailed pleading is not generally required.[36] Instead, to survive a motion to dismiss, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face."[37] "A claim has facial

---

[33] *Connelly v. Lane Const. Corp.,* 809 F.3d 780, 786 (3d Cir. 2016).

[34] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).

[35] *Ashcroft v. Iqbal*, 556 U.S. at 662, 678 (2009) (internal citations omitted).

[36] *Id.*

[37] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

plausibility when the pleaded factual content allows the court to draw the reasonable inferences that the defendant is liable for the misconduct alleged."[38] Furthermore, a non-moving party "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element."[39]

### B. Count I – Title VII Against All Defendants - Nassry's administrative charges are blatantly untimely based on the plain language of the Amended Complaint.

 Accepting Nassry's allegations as true, he made the decision to resign from his employment with Penn State in January of 2021, resigned effective June 2021, and remained employed only to remotely advise a graduate student until the end of 2021.[40] Nassry casts this as some sort of constructive discharge, although the rambling, hard-to-follow, allegations fail to set forth any facts establishing that he was actually forced to resign.[41]

---

[38] *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014) (citations omitted) (*quoting Iqbal*, 556 U.S. at 678).

[39] *Id.* (citations omitted).

[40] ECF No. 15, ¶¶ 93, 95-97, 240.

[41] See, *DiFiore v. CSL Behring, LLC*, 879 F.3d 71, 78 (3d Cir. 2018) ("Under Pennsylvania law, constructive discharge occurs when working conditions are so intolerable that a reasonable employee is forced to resign. *Kroen v. Bedway Sec. Agency, Inc.*, 633 A.2d 628, 633-34 (Pa. Super. Ct. 1993); *Helpin v. Trustees of the Univ. of Pennsylvania*, 969 A.2d 601, 614 (Pa. Super. Ct. 2009), aff'd, 10 A.3d 267 (Pa. 2010). The concept of constructive discharge is essentially identical for retaliation claims under federal statutes: it occurs when 'the employer permitted conditions so

Nassry purports to have initiated a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) and the Pennsylvania Human Relations Commission (PHRC) on October 3, 2022.[42] Thus, over 600 days passed from the time he was allegedly forced to decide to resign until the filing of his agency charge.

The "harassment" (notwithstanding that the facts fail to set forth "severe or pervasive" harassment to justify such a label) allegedly occurred in roughly 2015-19. Counting backwards 300 days prior to the charge filing date, Nassry is left only with claims for conduct occurring after December 7, 2021. The Amended Complaint is devoid of any allegedly discriminatory, harassing, or retaliatory conduct occurring after this date. Instead, Nassry apparently contends only that he continued to contact people at Penn State about his complaints and did not feel that they responded adequately. As such, Count I should be dismissed in its entirety with prejudice.

---

unpleasant or difficult that a reasonable person would have felt compelled to resign.' *Wiest v. Tyco Electronics Corp.*, 812 F.3d 319, 331 (3d Cir. 2016)") (cleaned up).

[42] ECF No. 15, ¶ 6.

## C. Count II – PHRA Against All Defendants

### 1.   *The PHRC charge is clearly untimely under the shortened 180-day filing requirement.*

As set forth above, over 600 days passed from the time Nassry was supposedly forced to resign, and the filing of his charge with the PHRC. In order to properly assert a claim under the PHRA, said claim must be filed within 180 days of the alleged act of discrimination.[43] Further, courts within the Third Circuit have consistently held that timely filings with the EEOC will not automatically toll the PHRA's statute of limitations where a plaintiff has elected to cross-file her charges.[44] In other words, even where federal claims are timely filed with the EEOC, dual-filed PHRA claims that fall outside of the 180-day statute of limitations will be time-barred.[45]

Here, it is clear on the face of the Amended Complaint that Nassry's PHRA claim was filed more than 180 days after any causes of action accrued. The applicable cutoff would be any cause of action accruing on or

---

[43] 43 P.S. § 959(h).
[44] *Zysk v. FFE Minerals USA, Inc.*, 225 F. Supp. 2d 482, 492-95 (E.D. Pa. 2001) ("[W]e set forth here for the first time this explanation in no uncertain terms: these federal cases cannot change the State's statute of limitations – which remains 180 days."); *see also McDonald v. SEIU Healthcare Pa.*, No. 1:13-CV-2555, 2014 U.S. Dist. LEXIS 130670, at *50-51 (M.D. Pa. Sept. 18, 2014)(dismissing as untimely dual-filed PHRA claim that had been filed 300 days after alleged discrimination).
[45] *Id.*

after April 6, 2022 – four months *after* Nassry's employment obligations to Penn State concluded. As such, Count II should also be dismissed with prejudice.

## 2. *The claims against the individual defendants fail to set forth plausible causes of action and are untimely.*

Unlike Title VII, the PHRA does actually allow for individual liability by prohibiting, "any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice."[46] As this Court has recognized, however, "[d]irect incidents of harassment by non-supervisory co-employees are not covered by § 955(e)."[47] Thus liability is limited to *only* a supervisory employee, "for [their] own direct act of discrimination or for [their] failure to take action to prevent further discrimination by an employee under supervision."[48]

Nassry appears to base his claims for individual liability against Jones, Kump, and Brewer solely on the factually unsupported allegation that they

---

[46] 43 P.S. § 955(e).

[47] *Holocheck v. Luzerne Cty. Head Start, Inc.*, 385 F. Supp. 2d 491, 497 (M.D. Pa. 2005), citing *Dici v. Pennsylvania*, 91 F.3d 542, 552-53 (3d Cir. 1996).

[48] *Id.*, citing *Davis v. Levy, Angstreich, Finney, Baldante, Rubenstein & Coren P.C.*, 20 F. Supp. 2d 885, 887 (E.D. Pa. 1998).

"ratified" his "termination" in December of 2021. It is unclear what any of them actually did, particularly in light of the allegations from Nassry himself that he resigned in March 2021, effective June 2021 except for remote supervision of a graduate student through the end of 2021. Nassry's conclusory statement about "ratification" of his resignation that he tendered nine months earlier does not support a claim for aiding and abetting discrimination. Even if it did, this would still fall far outside of the 180-day time limit for initiating a charge.

Finally, Nassry asserts a claim against Wardrop. The allegations against Wardrop are particularly jumbled and difficult to follow. They seem to generally allege that she did not satisfactorily respond to Nassry's complaints, told Nassry that leadership was "on her side," had some involvement with Nassry not obtaining positions to which he applied, and "used her influence to isolate him from research and teaching opportunities for supplemental pay." First, it is unclear how these actions would give rise to discrimination claims at all. Second, per Nassry's Amended Complaint, Wardrop was removed from her position in mid-

2018 (although she remained employed by Penn State)[49] and it is unclear what (if anything) she did that would plausibly give rise to a PHRA claim within 180 days of the filing of his charge. Therefore, any claim as to Wardrop is again untimely. Count II should be dismissed in its entirety with prejudice.

### D. Count III – Whistleblower Retaliation Against Penn State

Count III is based on alleged retaliation under the Pennsylvania Whistleblower Law, 43 P.S. §§ 1421, *et seq.* However, "A person who alleges a violation of this act may bring a civil action in a court of competent jurisdiction for appropriate injunctive relief or damages, or both, ***within 180 days after the occurrence of the alleged violation***."[50] The Amended Complaint refers to Nassry's "final termination on December 31, 2021,"[51] more than a full year before he initiated the instant action.[52]

Here, Nassry appears to contend that he made several reports regarding some sort of "misuse of budget funds" or "plagiarism" over a span of many years.[53] However, Nassry must plead facts establishing a

---

[49] ECF No. 15, ¶ 136.

[50] 43 P.S. § 1424 (emphasis added).

[51] Notwithstanding that he apparently decided to resign nearly a year earlier.

[52] ECF No. 15, ¶ 259.

[53] *Id.*, ¶ 220 (with additional reports coming *after* his resignation).

causal connection between these reports and the retaliatory conduct.[54] Not only does Nassry fail to allege a causal nexus but he fails to articulate what the retaliatory conduct was, or how it relates or is connected with his myriad internal complaints to Penn State. In any event, Nassry alleges that he made the decision to resign in January of 2021, effectively stopped working for Penn State in June of 2021 save for remotely advising a graduate student until the end of 2021. Given the 180-day statute of limitations, Nassry's claims would be limited only to conduct occurring on or after July 31, 2022. Nassry has failed to plead retaliatory conduct (with or without a causal connection) occurring since that time. Hence, in addition to failing to plead facts that would plausibly establish retaliation, his claim is clearly time barred. Accordingly, this Court should dismiss Count III with prejudice.

---

[54] *Golaschevsky v. Dep't of Envtl. Prot.*, 554 Pa. 157, 720 A.2d 757, 759-60 (Pa. 1998).

**E. Count IV – Wrongful Termination in Violation of Public Policy Against Penn State - Nassry has not identified the requisite clear mandate of public policy, other than possibly legislation with statutory remedies, which preempts a common law wrongful termination claim.**

In Count IV, Nassry alleges wrongful termination in violation of public policy against only Penn State.[55] This claim is either preempted by the Whistleblower Law, or is unsupported by any recognized public policy to the at-will employment doctrine. Either way, Count IV should be dismissed.

Pennsylvania adheres to the at-will employment doctrine, which allows employers to terminate employees "with or without cause, at pleasure, unless restrained by some contract."[56] However, Pennsylvania allows only a very narrow cause of action for wrongful termination "where the termination implicates a clear mandate of public policy in this Commonwealth."[57] "The public policy must be expressly recognized in legislation, administrative regulations or decisions, or judicial decisions."[58]

---

[55] ECF No. 15, ¶¶ 275-277, 288-294 (The Amended Complaint does not contain ¶¶278-287).

[56] *Smith v. Calgon Carbon Corp.*, 917 F.2d 1338, 1341 (3d Cir. 1990) (internal citation omitted).

[57] *McLaughlin v. Gastrointestinal Specialists, Inc.,* 750 A.2d 283, 297 (Pa. 2000)

[58] *Eaves-Voyles v. Almost Family, Inc.*, 198 F. Supp. 3d 403, 410 (M.D. Pa. 2016)(citations omitted).

The public policy exception is limited to situations in which an employer:

"(1) requires an employee to commit a crime; (2) prevents an employee

from complying with a statutorily imposed duty; [or] (3) discharges an

employee when specifically prohibited from doing so by statute."[59]

Here, Nassry at first relied on the Whistleblower Law in his initial

Complaint. This, of course, presented a significant legal barrier in that the

Third Circuit has expressly held that "Pennsylvania law does not recognize

a common law cause of action for violating public policy if a statutory

remedy exists."[60] And, Courts have repeatedly held that the public policy

exception is unavailable where the wrongful termination claim is based

upon an alleged violation of the Pennsylvania Whistleblower Law.[61] Thus,

to state a claim for wrongful termination in violation of public policy,

---

[59] *Id.*, quoting *Brennan v. Cephalon, Inc.*, 298 F. App'x 147, 150 (3d Cir. 2008)); see also *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 113 (3d Cir. 2003) (citation omitted).
[60] *Gillispie v. RegionalCare Hosp. Partners Inc.*, 892 F.3d 585, 597 (3d Cir. 2018); see also, *Ortiz v. Priority Healthcare Grp., LLC*, 2019 U.S. Dist. LEXIS 120044, 2019 WL 3240016, at *4 (M.D. Pa. Jul. 18, 2019); *Preobrazhenskaya v. Mercy Hall Infirmary,* 71 F. App'x 936 (3d Cir. 2003); *Wolk v. Saks Fifth Ave., Inc.,* 728 F.2d 221, 224 n.3 (3d Cir. 1984)); *Jacques v. AKZO Int'l Salt, Inc.*, 422 Pa.Super. 419, 619 A.2d 748, 753 (Pa. Super. Ct. 1993).
[61] *See Johnston v N Braddock Borough*, 2020 U.S. Dist. LEXIS 163094, 2020 WL 6730889 at *14 (W.D. Pa. Sept. 3, 2020), citing *Angelini v. U.S. Facilities, Inc.,* 2018 U.S Dist. LEXIS 107615, 2018 WL 3155995 at *12 (E.D. Pa. June 27, 2018) and *Kent v. Keystone Human Servs.,* 68 F.Supp. 3d 565, 568 (MD. Pa. 2014) (add'l citations omitted).

Nassry must (1) identify a clear mandate of public policy emanating from legislation, administrative regulations or decisions, or judicial decisions; but (2) he may not rely on a statute that affords him a statutory remedy.

Here, Count IV of the Amended Complaint contends Penn State terminated Nassry for his "reporting of plagiarism, harassment, retaliation, and the potential misuse of budget funds," with a particular emphasis on Penn State's receipt of state funding.[62] However, Nassry also contends that the Pennsylvania Whistleblower Law provides a statutory remedy for Penn State's alleged misconduct and, as such, Nassry is preempted from pursuing a common law wrongful termination claim based on it.[63] His references to "harassment" and "retaliation" seemingly invoke the discrimination statutes, but common law wrongful termination claims would likewise be barred because Title VII and the PHRA provide statutory causes of action. Further, Nassry cannot evade the administrative

---

[62] See ECF No. 15, ¶¶ 275-277, 288-294 (The Amended Complaint does not contain ¶¶278-287).

[63] *See, supra fn.*

exhaustion requirements of these statutes by bringing common law claims.[64]

In his Amended Complaint, Nassry apparently tries to evade preemption by the Whistleblower Law by simply deleting express references to the Whistleblower Law in Count IV. This raises a crucial question: if Nassry is not relying on the Whistleblower Law, then what is the source of the "public policy" supporting his wrongful termination claim? Nassry fails to cite any authority. While it is difficult to prove the absence of something, Penn State's counsel is unaware of any precedent under Pennsylvania law supporting a wrongful termination in this context.

In the Amended Complaint, Nassry alleges that the public has some particular interest in the prevention of plagiarism and academic dishonesty at a state-funded university. He further alleges that there is a public interest in "keeping a state-funded university in good reputation" and not employing a "problem employee that inflicts harm on others and misuses

---

[64]*See Clay v. Advanced Comput. Applications, Inc.*, 522 Pa. 86, 559 A.2d 917, 920 (Pa. 1989) (noting the PHRA's statutory scheme would be frustrated if aggrieved employees were permitted to circumvent the PHRC by simply filing claims in court); *see also Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398 (3d Cir. 1976) (holding "the 'preliminary requirements for a Title VII action are to be interpreted in a nontechnical fashion,' the aggrieved party 'is not permitted to bypass the administrative process.'").

public funds."[65] The Amended Complaint, however, is devoid of any citation to an expressly recognized public policy that might support Nassry's claim. Vaguely alluding to issues that might subjectively be in the public's interest is simply *not* what the phrase "public policy" means in this context. Penn State's counsel has not identified any precedent supporting a wrongful termination claim comparable to that asserted by Nassry.

In conclusion, Pennsylvania law is notoriously stingy with regard to recognizing public policy exceptions to at will employment. Here, Nassry has failed to plead a clear mandate of public policy that would justify such an exception. The only apparent mandates of public policy pled in the Amended Complaint appear to be under the discrimination statutes and the Pennsylvania Whistleblower law. These statutes, however, afford statutory remedies and therefore preclude/preempt a common law wrongful termination claim. This Court should therefore dismiss Count IV with prejudice.

---

[65] ECF No. 15, ¶290.

## V. Conclusion

This Court should dismiss all four of the Amended Complaint's claims

with prejudice for the following reasons:

- Count I - Title VII because Nassry clearly failed to initiate a charge with the EEOC within 300 days and his claims are time-barred.

- Count II – PHRA because:

  o Nassry clearly failed to initiated a charge with the PHRC within 180 days and his claims are time-barred; and

  o The allegations against the individual defendants fail to state a claim because the facts do not establish a plausible claim for aiding or abetting discrimination (and, as to Chamberlain, she was not alleged to have been in a supervisory position), and the individual conduct alleged in the complaint occurred well outside of the 180-day time limit.

- Count III – Pennsylvania Whistleblower Law because:

  o The claim is clearly barred by the statute of limitations; and

  o Nassry has not pled facts plausibly establishing a causal connection between his report of waste or wrongdoing and a retaliatory act occurring within the 180-day statute of limitations.

- Count IV – Wrongful Termination in Violation of Public Policy

  o Nassry has not identified a clear mandate of public policy to support such a claim; and

  o To the extent Nassry identifies the Pennsylvania Whistleblower Law, PHRA, or Title VII as the basis for a clear mandate of

public policy, those laws all create statutory causes of action, which preempts any common law claim for wrongful termination.

In conclusion, this Court should grant Penn State's Motion to Dismiss and dismiss Nassry's Amended Complaint with prejudice.

Respectfully submitted,

McQUAIDE BLASKO, INC.

Dated:  April 24, 2023             By: /s/Philip K. Miles
                                   Philip K. Miles III, Esquire
                                   Pa. I.D. No. 209425
                                   pkmiles@mqblaw.com
                                   811 University Drive
                                   State College, PA 16801
                                   (814) 235-2222
                                   Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL QUINN NASSRY, | : | |
|         Plaintiff, | : | Case No. 4:23-cv-00148-MWB |
|   v. | : | |
| | : | Chief Judge Matthew W. |
| THE PENNSYLVANIA STATE | : | Brann |
| UNIVERSITY, NICHOLAS P. | : | |
| JONES, LEE KUMP, CYNTHIA | : | Complaint filed: 1/27/2023 |
| BREWER, AND DENICE | : | |
| WARDROP, | : | |
|         Defendants. | : | ***Electronically Filed*** |

## CERTIFICATE OF COMPLIANCE
## with Local Rule 7.8(b)(2)

I, Philip K. Miles III, attorney for Defendants, hereby certify that

Defendants' Brief in Support of Motion to Dismiss Plaintiff's Amended

Complaint contains 4,581 words.


                         McQUAIDE BLASKO, INC.

Dated:  April 24, 2023         By: /s/ Philip K. Miles
                            Philip K. Miles III, Esquire
                            Pa. I.D. No. 209425
                            pkmiles@mqblaw.com
                            811 University Drive
                            State College, PA 16801
                            (814) 235-2222
                            Fax:  (814) 234-5620
                            Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL QUINN NASSRY, | : | |
| Plaintiff, | : | Case No. 4:23-cv-00148-MWB |
| v. | : | |
| THE PENNSYLVANIA STATE | : | Chief Judge Matthew W. |
| UNIVERSITY, NICHOLAS P. | : | Brann |
| JONES, LEE KUMP, CYNTHIA | : | |
| BREWER, AND DENICE | : | Complaint filed:  1/27/2023 |
| WARDROP, | : | |
| Defendants. | : | ***Electronically Filed*** |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Defendants' Brief in Support of Motion to Dismiss Plaintiff's Amended Complaint in the above-captioned matter was served via Email, U.S. Mail and/or ECF this 24th day of April, 2023, to the attorneys/parties of record as follows:

John M. Hampton, Esquire
1022 Centre Street
Ashland, PA  17921
(570) 875-4444
john@johnhamptonlaw.com
*(for Plaintiff)*

Arthur D. Goldman, Esquire
P.O. Box 115
Paoli, PA  19301
(484) 343-2856
agoldman@arthurgoldmanlaw.com
*(for Plaintiff)*

McQUAIDE BLASKO, INC.

By: /s/Philip K. Miles
Philip K. Miles III, Esquire
Pa. I.D. No. 209425
pkmiles@mqblaw.com
811 University Drive
State College, PA 16801
(814) 235-2222
Attorneys for Defendants