IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL QUINN NASSRY, | : | |
| | : | Case No. 4:23-cv-00148-MWB |
| Plaintiff, | : | |
| v. | : | Chief Judge Matthew W. |
| | : | Brann |
| THE PENNSYLVANIA STATE | : | |
| UNIVERSITY, NICHOLAS P. | : | Complaint filed: 1/27/2023 |
| JONES, LEE KUMP, CYNTHIA | : | |
| BREWER, AND DENICE | : | |
| WARDROP, | : | *Electronically Filed* |
| | : | |
| Defendants. | : | |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF
## MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT
## <u>PER FED. R. CIV. P. 12(b)(6)</u>

Philip K. Miles III, Esquire
Pa. I.D. No. 209425
pkmiles@mqblaw.com
McQUAIDE BLASKO, INC.
811 University Drive
State College, PA 16801
(814) 235-2222
Fax:  (814) 234-5620

Attorneys for Defendants

Dated:  May 23, 2023

# <u>TABLE OF CONTENTS</u>

<u>Page(s)</u>

*Table of Authorities*........................................................................... ii

I.    Procedural History and Introduction...........................................1

II.   Nassry's brief was untimely under Local Rule 7.6, which means he "shall be deemed not to oppose such motion."........................................1

III.  The Amended Complaint fails to plausibly establish either a basis for equitable tolling or timely facts establishing claims.........................3

    A. PHRA .......................................................................................3

    B. Title VII...................................................................................7

    C. Whistleblower Law .................................................................9

IV.  The Amended Complaint does not include sufficient factual allegations to support either individual liability or a Whistleblower Law claim ..........................................................10

    A. Defendants Jones, Kump, and Brewer................................11

    B. Defendant Wardrop...............................................................13

    C. Whistleblower Law ...............................................................14

V.   Nassry's wrongful termination claim fails to identify a recognized public policy exception to the at-will employment doctrine...............15

VI.  Conclusion...................................................................................23

i

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 108 S. Ct. 614, 98 L.Ed.2d 720 (1980) .........................9

*Nicole B. v. Sch. Dist. of Phila.*, 237 A.3d 986 (Pa. 2020) .................................................................3, 4, 5

*Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380 (3d Cir. 1994).......................................4, 8

*Sch. Dist. of Phila. v. Commonwealth Ass'n of Sch. Adm'rs.*, 2016 Phila. Ct. Com. Pl. LEXIS 634 ....18, 19, 21

*Stackhouse v. Mazurkiewicz,* 951 F.2d 29 (3d Cir. 1991).........................................................................2

*Weaver v. Harpster,* 975 A.2d 555 (Pa. 2009) ............................................................................16, 17, 21

**Statutes**

28 U.S.C. §1367(c)(3) ...............................................................................................................................9

43 P.S. §959(h).........................................................................................................................................7

**Rules**

Local Rule 7.6............................................................................................................................................1, 2

**I. Procedural History and Introduction**

Defendants (collectively referred to as "Penn State" herein unless specified otherwise) file this Reply Brief to address arguments raised by Plaintiff ("Nassry") in opposition to their Motion to Dismiss. In short:

- Nassry filed his brief after the deadline set forth in Local Rule 7.6, and this Court may therefore deem the instant motion unopposed;

- Nassry failed to identify either (1) facts plausibly establishing causes of action that accrued within the statute of limitations period for his Title VII, Pennsylvania Human Relations Act (PHRA), or Whistleblower Law claims (Counts I, II, and III, respectively), or (2) a viable basis for equitable tolling;

- Nassry has not explained how the factual allegations state plausible causes of action for individual liability against the individual defendants, or his Whistleblower Law retaliation claim; and

- Nassry did not identify a clear mandate of public policy sufficient to state a common law claim for wrongful termination.

Accordingly, this Court should grant Penn State's Motion to Dismiss and dismiss Nassry's Amended Complaint in its entirety with prejudice.

**II.  Nassry's brief was untimely under Local Rule 7.6, which means he "shall be deemed not to oppose such motion."**

Under Local Rule 7.6, a party opposing a motion, "shall file a brief in opposition within fourteen (14) days after service of the movant's brief." The rule expressly states the consequence of missing this deadline in clear

and mandatory terms: "Any party who fails to comply with this rule shall be deemed not to oppose such motion." Here, Penn State filed its brief in support of its Motion to Dismiss on April 24, 2023.[1] Nassry filed his Brief in Response to Defendants' Motion to Dismiss on May 9, 2023, beyond the 14-day deadline.[2]

The Third Circuit Court of Appeals generally disfavors granting a motion to dismiss solely based on a violation of Local Rule 7.6 without an analysis of the underlying merits.[3] "There may be some cases where the failure of a party to oppose a motion will indicate that the motion is in fact not opposed, particularly if the party is represented by an attorney and in that situation the rule may be appropriately invoked."[4] The instant motion may therefore be deemed unopposed. If the Court endeavors to analyze the merits, the Motion to Dismiss should still be granted for the reasons that follow.

---

[1] ECF No. 18.

[2] ECF No. 21. Nassry inadvertently filed the incorrect document found at ECF No. 20 before filing the correct document at ECF No. 21. Note, however, that neither document was filed on or before May 8, 2023 as required by Local Rule 7.6.

[3] *Stackhouse v. Mazurkiewicz,* 951 F.2d 29, 30 (3d Cir. 1991).

[4] *Id.*

## III. The Amended Complaint fails to plausibly establish either a basis for equitable tolling or timely facts establishing claims.

When faced with a motion to dismiss for untimeliness, plaintiffs would seem to have two primary means of responding: (1) identify a recognized basis for tolling the statute of limitations; or (2) pinpoint factual allegations occurring within the limitations period. Here, Nassry has done neither. Accordingly, this Court should dismiss Counts I, II, and III under Title VII, the PHRA, and the Whistleblower Law respectively.

### A. PHRA

Nassry contends that equitable tolling should apply where he missed the deadline but "attempted to resolve the issues on his own using employer-created channels," so as to avoid "overwhelm[ing]" the Pennsylvania Human Relations Commission ("PHRC").[5] Nassry does not cite a single case recognizing this theory. Instead, Nassry focuses almost entirely on the Supreme Court of Pennsylvania's decision in *Nicole B. v. Sch. Dist. of Phila.*[6]

---

[5] ECF No. 21, p. 14.
[6] 237 A.3d 986, 993 (Pa. 2020).

Even a cursory reading of *Nicole B.* makes clear that the equitable tolling in that case was based primarily on the PHRA complainant's status as a minor (child):

> Initially, this appeal involves the right of a minor to bring a legal action. Generally speaking, children have a distinct legal disability, as they are prohibited from personally bringing a cause of action before reaching the age of majority. The underlying rationale of **minority tolling** is not to deprive minors of their rights, but to safeguard those rights during a period in which minors are viewed as being immature, inexperienced, and unable to independently protect them. In Pennsylvania, as noted above, to safeguard certain minors' rights during their period of legal disability, the General Assembly has enacted the Minority Tolling Statute for minors bringing a "civil action," exempting children from the operation of statutes of limitations during their period of legal disability, and enabling them to bring a civil action on their own behalf upon reaching the age of majority. 42 Pa.C.S. § 5533.[7]

Nassry, of course, is not a minor and *Nicole B.* therefore does little to support equitable tolling in his case.

Nassry instead relies on some of the broader policy language from *Nicole B.* and a Third Circuit case relied upon therein, *Oshiver v. Levin, Fishbein, Sedran & Berman*.[8] Indeed, courts have recognized that equitable

---

[7] *Id.* At 993 (emphasis added).

[8] 38 F.3d 1380, 1392 (3d Cir. 1994). Notably, *Oshiver* recognized equitable tolling where the employer actively misled the employee, the employee was "reasonably prudent with regard for her rights," and reasonable prudence would not have led to the

tolling is "malleable," and limitations periods should be interpreted in a "humane and commonsensical manner."[9] The circumstances actually recognized by the Supreme Court of Pennsylvania in *Nicole B.* are instructive though:

- "fraud and concealment";

- the "discovery rule";

- "extraordinary circumstances where a plaintiff is prevented from asserting his rights";

- "where a plaintiff asserts his rights in the wrong forum" and

- "minority tolling" (where the complainant is a juvenile).

None of these situations are present in Nassry's case. The situations also consistently involve circumstances where either the plaintiff sought to enforce his rights in the wrong forum, or was prevented from asserting his rights (by concealment, lack of discovery, "extraordinary circumstances," or because the plaintiff is a minor who lacks capacity to assert his rights). Here, nothing prevented Nassry from asserting his rights and he did not attempt to assert his rights in any forum outside of his own workplace.

---

discovery of the deception sooner. Such allegations do not appear in Nassry's complaint.

[9] ECF No. 21, p. 12.

Respectfully, this Court should not break new ground by applying equitable tolling principles to a theory of administrative convenience. Even if, however, this Court were inclined to entertain a tolling theory where employees toll the limitations period by lodging complaints with their employers so as to avoid burdening government enforcement agencies, this case presents a poor vehicle. Nassry made the decision to resign in January 2021, resigned effective June 30, 2021, and remained employed solely to remotely advise a graduate student until December 31, 2021.[10] Even if his theory of equitable tolling were viable, surely the statute of limitations would start to run prior to April 6, 2022 (180 days prior to his filing). To hold otherwise would effectively eviscerate the statute of limitations as complainants could always assert that they still held out subjective hope that their employer would do something different, even months (or years) after deciding to resign.

Nassry further contends that this Court should find it "commendable" that he "did not run to the PHRC" to file a timely complaint because it avoids "overwhelm[ing]" the PHRC.[11] This is, of course, contrary to

---

[10] ECF No. 15, ¶¶ 95-97, 240.
[11] ECF No. 21, p. 14.

common sense. But, more importantly, it is contrary to the expressly stated public policy of the Commonwealth of Pennsylvania. The PHRA expressly states that the complaint must be filed within 180 days.[12] Forcing the PHRA to examine untimely claims would do it no favors. Instead, it would burden the PHRC with time-barred claims. Ultimately, however, it is not for this Court to weigh the costs and benefits of the 180-day limitations period. The Pennsylvania legislature has already struck the balance with a clearly stated public policy by enacting the time limit included in the PHRA.

Nassry has not alleged facts establishing the accrual of a cause of action within the PHRA's 180-day statutory limitations, and he has not provided a valid basis for equitable tolling. This Court should therefore dismiss Nassry's PHRA claim (Count II) with prejudice.

**B. Title VII**

Nassry's arguments with regard to his Title VII claim do not significantly differ from his arguments on tolling his PHRA claim. Nassry

---

[12] 43 P.S. §959(h).

again relies on *Oshiver*, which enumerates "three principal, though not exclusive, situations in which equitable tolling may be appropriate:"

> (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action;
>
> (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or
>
> (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum.[13]

Notably, none of these situations are present in the instant matter.

Again, as under the PHRA, these situations entail a plaintiff being misled or otherwise prevented from asserting his rights, or attempting to assert his rights in the wrong forum. As with his PHRA complaint, nothing prevented Nassry from filing a Title VII charge with the Equal Employment Opportunity Commission (EEOC). Nassry also does not contend that he filed any sort of charge or complaint with a court or government agency. Nassry does not appear to contend that internal complaints with his employer are tantamount to mistakenly filing a claim in the wrong forum. This Court should decline the invitation to create a

---

[13] *Oshiver*, 38 F.3d at 1387 (formatted for convenience and internal citations omitted).

new basis for equitable tolling for the same reasons set forth above in subsection (A).

Again, Nassry does not pinpoint facts occurring within 300 days of filing his EEOC charge. He also does not identify any precedent supporting his apparently novel theory of equitable tolling. This Court should therefore dismiss Nassry's Title VII claim (Count I) with prejudice because he did not timely file an EEOC charge. If this Court dismisses Nassry's Title VII claim, it may simply decline to exercise supplemental jurisdiction over the remaining claims.[14]

## C. Whistleblower Law

Nassry provides literally no legal citation in support of his argument that the Whistleblower Law statute of limitations should be tolled here. He baldly asserts that the statute of limitations should not begin to run until "all communication ceased" between himself and the university.[15] This

---

[14] 28 U.S.C. §1367(c)(3) (it is within the Court's discretionary authority to decline to exercise supplemental jurisdiction over state law claims once it has "dismissed all claims over which it has original jurisdiction."); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7, 108 S. Ct. 614, 98 L.Ed.2d 720 (1980) (opining that when "all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendant jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.").

[15] ECF No. 21, p. 16.

argument has two fundamental (and fatal to his claim) problems. First, the statute of limitations generally runs from the accrual of the claim, and he provides no legal basis for tolling the limitations period until his last correspondence with Penn State (and any claim accrued in 2021 when his employment relationship ended). Second, even accepting Nassry's unsupported theory that the statute of limitations is tolled until communications cease, the latest allegation of communications between Nassry and Penn State appears to have occurred on July 19, 2022.[16] Notably, Nassry's initial complaint would *still* be untimely because he filed it 192 days later on January 27, 2023.[17] Nassry provides neither a factual nor a legal justification for filing his claim well-beyond the 180-day statute of limitations. This Court should therefore dismiss Nassry's Whistleblower Law retaliation claim (Count III) with prejudice.

## IV. The Amended Complaint does not include sufficient factual allegations to support either individual liability or a Whistleblower Law claim.

As an initial matter, Nassry fails to allege *any* conduct by *any* of the individual defendants that occurred within 180 days of the filing of his

---

[16] ECF No. 15, ¶239.
[17] See filing date on ECF No. 1.

10

PHRC charge. It would be particularly inequitable to toll the statute of limitations as to individual defendants based on an alleged lack of satisfactory investigation by their employer.[18] Therefore, this Court need not endeavor to discern whether the facts plausibly establish claims against the individual defendants. If, however, this Court concludes that Nassry is somehow excused from obeying the PHRA's express statute of limitations, then his factual allegations against the individual defendants still fall short.

## A. Defendants Jones, Kump, and Brewer

Setting aside the untimeliness of their claims, the Amended Complaint also fails to set forth facts plausibly establishing that Defendants Jones, Kump, and Brewer "aided and abetted" discrimination under the PHRA. Nassry appears to contend that *any* Penn State employee who is above Nassry "in the chain-of-command" in either a "direct or indirect supervisory position" is *automatically* liable for any discrimination perpetrated by their subordinates.[19]

---

[18] This raises a separate issue of when the statute of limitations begins to run as to any one individual defendant, an issue essentially ignored by Nassry.
[19] ECF No. 21, p. 18.

In his brief, Nassry lays out the chain of command, identifies these three named defendants as being above both Nassry and Defendant Wardrop on the organizational chart.[20] He then concludes that the three "directly and indirectly enabled an intolerable working environment to fester . . . ."[21] The brief, however, fails to connect the dots and explain what acts or omissions actually aided and abetted discrimination. The Amended Complaint is devoid of allegations that Nassry reported concerns of discrimination directly to any of these three defendants. It is therefore unclear how they aided and abetted any acts of discrimination.

Nassry's theory appears to be that Jones is "especially culpable" because he allowed Wardrop to remain employed even though she was a "problem employee."[22] Of course, this theory is undercut by Nassry's admission that Wardrop was removed from her position (although she remained employed by Penn State) in 2018.[23] Further, Nassry's belief that Wardrop was a "problem employee" appears rooted in concerns that stray far from his discrimination theory of the case.[24]

---

[20] ECF No. 21, p. 19.
[21] *Id.*
[22] *Id.*
[23] ECF No. 15, ¶136.
[24] ECF No. 21, p. 19.

Finally, Nassry again fails to set forth a coherent timeline of events, with an explanation of how his allegations tie to the elements of a claim. What is abundantly clear, however, is that Nassry no longer had *any* employment relationship with Penn State within 180 days of filing his PHRC charge. How could the individual defendants have "enabled an intolerable working environment" within the limitations period when Nassry no longer even worked there? Thus, even if this Court could somehow discern a basis for attributing individual liability to these three defendants, such claims would be time-barred as a matter of law.

## B. Defendant Wardrop

The allegations against Wardrop are far more extensive, although difficult to track.[25] One might expect a plaintiff facing a motion to dismiss for factual insufficiency to pinpoint allegations in the pleading and then tie them to the elements of a cause of action. Nassry's brief, however, provides no such roadmap.

---

[25] In his brief, Nassry contends that Defendants disparaged his pleading as "unintelligent." While the pleading is rambling and difficult to follow, Defendants did not use the word "unintelligent," so it is unclear why that word appears in quotes. ECF No. 21, p. 2.

Generally, Nassry contends that Wardrop failed to address "sexual harassment" (notwithstanding that the allegations fall far short of making out a claim for sexual harassment) by a co-worker **from 2015-18**.[26] Obviously, this issue falls far outside of the statute of limitations. She also allegedly "blocked" him from a job, and "isolate[d] him from research and teaching opportunities."[27] Again, it is unclear what actions she actually took, and how they tie to "gender-based plagiarism" or harassment from years ago. What is clear, however, is that Wardrop was removed from her position in 2018 (although she remained employed by Penn State), and Nassry had no employment relationship with Penn State after 2021. Thus, even if this Court could discern a cause of action against Wardrop, it would clearly be time-barred because Nassry did not file a charge with the PHRC until October 3, 2022.

## C. Whistleblower Law

Per its heading, Section IV(C) of Nassry's brief purportedly addresses a "causal nexus between plaintiff's allegations and damages sustained by Plaintiff from the actions of all Defendants" in the context of his

---

[26] ECF No. 15, ¶23.
[27] *Id.* at 251-57.

Whistleblower Law claim. First, this section of the brief does not seem to address the Whitsleblower Law claim. Second, and more fundamentally, the header misstates the relevant causal nexus. While it is true that the Amended Complaint fails to explain how the alleged retaliatory acts forced Nassry to resign, Nassry faces another causal nexus issue. This Court should dismiss Nassry's Whistleblower Law claim because the alleged facts do not establish a causal connection between his alleged reports of wrongdoing and any retaliatory conduct.[28] Even if Nassry could establish such a connection, his Whistleblower Law claim would still fall far outside of the Statute of Limitations and should therefore be dismissed with prejudice.

**V.  Nassry's wrongful termination claim fails to identify a recognized public policy exception to the at-will employment doctrine.**

In response to Penn State's motion to dismiss his wrongful termination claim for legal insufficiency, Nassry advances two arguments: (1) his subjective belief that academic integrity is important and "tax-paying citizen[s]" do not "want" a partially state-funded university to be complicit in plagiarism; and (2) a single unpublished Court of Common Pleas of

---

[28] See, ECF No. 20, pp. 18-19.

Philadelphia County decision that is inapposite.[29] Notably, Nassry fails to provide a single legal citation for the proposition that an at-will employee may bring a claim for wrongful termination based on a public policy against plagiarism or in favor of academic integrity.

On the first point, Nassry confuses a vague and subjective sense of "public interest" for the actual legal standard set forth in *Weaver v. Harpster* (Pa. 2009).[30] In *Weaver*, the Supreme Court of Pennsylvania made clear that a common law exception to at-will employment requires a "clear mandate of public policy."[31] The Court emphasized the importance of judicial restraint where the legislature has not established a public policy advancing the claimed interest:

> In our judicial system, the power of the courts to declare pronouncements of public policy is sharply restricted. *Mamlin v. Genoe (City of Philadelphia Police Beneficiary Ass'n)*, 340 Pa. 320, 17 A.2d 407, 409 (Pa. 1941). Rather, it is for the legislature to formulate the public policies of the Commonwealth. The right of a court to declare what is or is not in accord with public policy exists "only when a given policy is so obviously for or against public health, safety, morals, or welfare that there is a virtual unanimity of opinion in regard to it." *Mamlin*, 17 A.2d at 409. Only in the clearest of cases may a court make public policy the basis of its decision. *Id.* To determine the public policy of the

---

[29] ECF No. 21, pp. 21-22.
[30] 975 A.2d 555 (Pa. 2009).
[31] *Id.* at 563.

> Commonwealth, we examine the precedent within
> Pennsylvania, looking to our own Constitution, court decisions,
> and statutes promulgated by our legislature. *McLaughlin*, 750
> A.2d at 288; *Hall v. Amica Mutual Ins. Co.*, 538 Pa. 337, 648 A.2d
> 755 (Pa. 1994); *Lurie v. Republican Alliance*, 412 Pa. 61, 192 A.2d
> 367 (Pa. 1963); *Mamlin*, 340 Pa. 320, 17 A.2d 407.[32]

Indeed, *Weaver* itself dealt with allegations of sex discrimination and sexual harassment. Surely the public holds some general interest in stamping out invidious sex discrimination and sexual harassment in the workplace. Yet, the Court exercised judicial restraint in the absence of a clear legislative mandate, and held that a terminated employee could not bring a common law claim for workplace sex discrimination or sexual harassment.

In the instant matter, Penn State is not denouncing its dedication to academic integrity any more than the Supreme Court of Pennsylvania was dismissing the public interest in eliminating sex discrimination and sexual harassment. Instead, Penn State merely demands that Nassry meet the actual standard set forth in *Weaver*, by identifying a "clear mandate of public policy." A general public interest in academic integrity does not satisfy this threshold requirement.

---

[32] *Id.*

In addition to his "public interest" argument, Nassry cites a single case, *Sch. Dist. of Phila. v. Commonwealth Ass'n of Sch. Adm'rs.*.[33] Notably, *Sch. Dist. Of Phila.* is an unpublished trial court opinion that according to Lexis+ Shepardize has *never* been cited by a single court decision or even any law review, treatise, annotated statute, regulation, restatement, or "other source."[34] *Sch. Dist. Of Phila.*, however, provides some superficial support for Nassry's position by making broad proclamations of a public policy against "plagiarism and cheating." A closer examination, however, reveals that this case does not justify creating a new exception to the at-will employment doctrine for Nassry.

In *Sch. Dist. Of Phila.*, the trial court reviewed an arbitrator's decision to reinstate a school principal despite finding she had failed in her duty to supervise her employees. Specifically, the principal had allowed rampant cheating by her employees on "federally mandated and standardized educational tests." The trial court vacated the arbitrator's award, effectively permitting the school district to terminate the employee. Important

---

[33] 2016 Phila. Ct. Com. Pl. LEXIS 634.
[34] Based on Lexis+ Shepardize conducted on May 21, 2023 returning zero results for Citing Decision and Other Citing Sources.

differences between the facts and procedural posture in the instant matter

versus *Sch. Dist. Of Phila.* preclude the latter's application to Nassry's case.

First, *Sch. Dist. Of Phila.* did *not* recognize an exception to the at-will

employment doctrine for plagiarism (and Nassry has not identified a single

case holding as such). In fact, the decision to vacate the arbitrator's award

was based largely on the fact that the collective bargaining agreement

(CBA) gave the employer the sole discretion to terminate the principal for

"cause."[35] The Court held that the arbitrator "improperly substituted his

own judgment of proper discipline for that of the District."[36] Unlike the

instant matter, the Court did not have to weigh a public policy regarding

cheating against the default public policy of at-will employment. To the

contrary, the Court emphasized the importance of *not* substituting the

arbitrator's judgment for that of the employer on employment decisions.

Further still, the case dealt with "federally mandated and standardized

educational tests." Here, Nassry identifies no such mandates (again, note

that a "clear mandate of public policy" is what is required to state a

common law wrongful termination claim). Indeed, were Nassry to identify

---

[35] *Id.* at *3.
[36] *Id.*

such a mandate, then he would presumably be back in the same conundrum in which he found himself under his initial complaint. Without such a mandate, he has no common law claim for wrongful termination.[37] If such a mandate is present, however, then his claim would properly be framed as a Whistleblower Law violation, which preempts a common law wrongful termination claim.

Nassry oddly contends that his claim is not preempted because the lack of a statutory remedy "suggests the Pennsylvania legislature has chosen to place handling this issue squarely in the hands of the academic institution . . . ."[38] He cites, however, no actual legislation to support such delegation of authority. Further, if the matter were in fact delegated to the academic institution, then this would severely undercut Nassry's theory that a court should intervene in this matter.

Finally, the Court in *Sch. Dist. Of Phila.* concluded its analysis by underscoring the poor message that would be sent to children should the principal be reinstated. The public policy at issue related to the public

---

[37] Nassry appears to concede that there is "no statutory remedy in Pennsylvania for plagiarism," but also does not identify any non-remedial statutory basis for his claim. See, ECF No. 21, p. 23.
[38] ECF No. 21, p. 23.

education of children under the principal's supervision. By contrast, Nassry does not implicate the education of children, and instead relates primarily to allegations of misattribution of research authorship. *Sch. Dist. Of Phila.* simply never touches on such issues.

In conclusion, neither of Nassry's two arguments is valid. A general public interest in academic integrity does not meet the "clear mandate of public policy" standard set forth in *Weaver*.  The Supreme Court of Pennsylvania clearly eschewed reliance on the Court's judgment about what is in the public's interest in favor of looking primarily to the legislature for clear mandates of public policy. While Nassry may rely on judicial opinions to identify a clear mandate of public policy, he failed to find a single case recognizing a common law wrongful termination cause of action analogous to his purported claim. Instead, Nassry relies entirely on *Sch. Dist. Of Phila.*, which is inapposite because:

- The Court did not find that the public policy at issue in that case created an exception to at-will employment, and actually emphasized the importance of deferring to the employer's discretion on employment decisions;[39]

---

[39] Admittedly in the context of a CBA as opposed to the at-will employment doctrine.

- The public policy at issue was predicated on "federally mandated and standardized" tests and Nassry has not identified any such mandate in his case; and

- Ultimately, the public policy related to the federal mandate and the implications for the education of children in our school system, which is again not present in Nassry's case.

This Court should therefore dismiss Nassry's claim for wrongful termination in violation of public policy (Count IV) with prejudice because he has not identified a clear mandate of public policy.

Further, even if this Court were to create such an exception to at-will employment, the Amended Complaint fails to plead sufficient facts to establish such a cause of action. When called upon to explain how the facts in his Amended Complaint state a cause of action, Nassry quite literally directs the Court to just read "Paragraphs 111 through 239."[40] If Nassry had indeed pled sufficient facts, then respectfully, he should have matched the averments in his pleading to the elements of the cause of action. His failure to do so is either because the facts do not plausibly establish a cause of action, or because he insists that this Court piece it together without his help. Either way, this Court should dismiss Nassry's common law

---

[40] ECF No. 21, p. 23.

termination claim because (1) it is not supported by a clear mandate of

public policy; and (2) even if it were, the facts do not plausibly establish

such a cause of action.

## VI. Conclusion

This Court should dismiss Nassry's Amended Complaint in its entirety

with prejudice because:

- His brief was untimely and he has therefore not properly opposed the motion to dismiss;

- Counts I, II, and III (Title VII, PHRA, and Whistleblower Law) are all barred by the statute of limitations and Nassry proffers neither timely factual averments nor a cognizable basis for tolling;

- The factual averments fail to establish individual liability (for individual defendants under Count II) or a causal connection between reports of wrongdoing and adverse actions (for Count III); and

- Nassry fails to identify a recognized public policy exception to the at-will employment doctrine, and the facts do not establish such a claim in any event.

Respectfully submitted,

McQUAIDE BLASKO, INC.

Dated: May 23, 2023                 By: /s/Philip K. Miles

Philip K. Miles III, Esquire
Pa. I.D. No. 209425
pkmiles@mqblaw.com
811 University Drive
State College, PA 16801
(814) 235-2222
Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL QUINN NASSRY,    :
              Plaintiff,    :    Case No. 4:23-cv-00148-MWB
   v.              :
                        :    Chief Judge Matthew W.
THE PENNSYLVANIA STATE   :    Brann
UNIVERSITY, NICHOLAS P.   :
JONES, LEE KUMP, CYNTHIA   :    Complaint filed: 1/27/2023
BREWER, AND DENICE      :
WARDROP,              :
           Defendants.    :    *Electronically Filed*

## CERTIFICATE OF COMPLIANCE
## with Local Rule 7.8(b)(2)

I, Philip K. Miles III, attorney for Defendants, hereby certify that

Defendants' Reply Brief in Support of Motion to Dismiss Plaintiff's

Amended Complaint contains 4,570 words.

McQUAIDE BLASKO, INC.


Dated:  May 23, 2023        By: /s/Philip K. Miles
                            Philip K. Miles III, Esquire
                            Pa. I.D. No. 209425
                            pkmiles@mqblaw.com
                            811 University Drive
                            State College, PA 16801
                            (814) 235-2222
                            Fax:  (814) 234-5620
                            Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL QUINN NASSRY, | : | |
| Plaintiff, | : | Case No. 4:23-cv-00148-MWB |
| v. | : | |
| THE PENNSYLVANIA STATE | : | Chief Judge Matthew W. |
| UNIVERSITY, NICHOLAS P. | : | Brann |
| JONES, LEE KUMP, CYNTHIA | : | |
| BREWER, AND DENICE | : | Complaint filed: 1/27/2023 |
| WARDROP, | : | |
| Defendants. | : | *Electronically Filed* |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Defendants' Reply Brief in Support of Motion to Dismiss Plaintiff's Amended Complaint in the above-captioned matter was served via Email, U.S. Mail and/or ECF this 23rd day of May, 2023, to the attorneys/parties of record as follows:

John M. Hampton, Esquire
1022 Centre Street
Ashland, PA  17921
(570) 875-4444
john@johnhamptonlaw.com
*(for Plaintiff)*

Arthur D. Goldman, Esquire
P.O. Box 115
Paoli, PA  19301
(484) 343-2856
agoldman@arthurgoldmanlaw.com
*(for Plaintiff)*

McQUAIDE BLASKO, INC.

By: /s/Philip K. Miles
Philip K. Miles III, Esquire
Pa. I.D. No. 209425
pkmiles@mqblaw.com
811 University Drive
State College, PA 16801
(814) 235-2222
Attorneys for Defendants

26