## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL QUINN NASSRY, | No. 4:23-CV-00148 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| THE PENNSYLVANIA STATE UNIVERSITY, *et al.*, | |
| Defendants. | |

## <u>MEMORANDUM OPINION</u>

### AUGUST 8, 2023

Michael Quinn Nassry brought this amended complaint alleging violations of Title VII of the Civil Rights Act of 1964[1] along with various state law claims related to the alleged sexual harassment that he endured while employed at The Pennsylvania State University ("Penn State"). Regardless of any potential merits to his claims, the complaint makes clear that Nassry's Title VII claim is facially untimely, and there is no basis for the Court to apply equitable tolling. Consequently, Nassry's Title VII claim will be dismissed with prejudice, and the Court will not exercise supplemental jurisdiction over his state law claims.

---

[1]   42 U.S.C. § 2000, *et seq.*

## I.     BACKGROUND

In 2013, Nassry was hired by Penn State as a postdoctoral scholar.[2] Nassry was employed in the Riparia Research Center ("Riparia") in Penn State's Department of Geography where he served as a hydrology subject matter expert and taught undergraduate classes.[3] Nassry's employment with Penn State was generally positive until sometime around 2015, when Nassry alleges that incidents of sexual harassment began, which escalated through 2018.[4]

Nassry alleges that, in 2015, Sarah Chamberlain, an associate professor at Penn State and Nassry's coworker at Riparia, began sexually harassing Nassry both on campus and off campus at meetings and professional conferences.[5] The first incident allegedly occurred in 2015 or 2016 during a meeting at the Environmental Protection Agency's ("EPA") offices in Crystal City, Virginia, when an EPA employee who was friends with Chamberlain informed Nassry that Chamberlain "really needs to get laid."[6]

In the autumn of 2016, Chamberlain requested a meeting with Nassry at a bar to discuss a grant proposal, but then did not wish to discuss the proposal and, in October 2016, she asked Nassry to have dinner with her, which he declined.[7] In the

---

[2]    Doc. 15 ¶ 19.
[3]    *Id.* ¶ 22.
[4]    *Id.* ¶ 23.
[5]    *Id.* ¶¶ 23-25.
[6]    *Id.* ¶¶ 49-50.
[7]    *Id.* ¶¶ 51-52.

spring of 2017, Chamberlain allegedly initiated "unnecessary calls and text messages" that, for example, requested contact information for Chamberlain's friends.[8] Nassry later blocked Chamberlain's phone number to prevent these calls and text messages, which caused Chamberlain to cry in the office of a coworker for one hour.[9]

In the spring of 2017, Nassry became aware that several women within Penn State's Department of Geography published a scholarly article entitled "*Effects of Human Activity on the Processing of Nitrogen in Riparian Wetlands: Implications for Watershed Water Quality*."[10] Nassry was not credited as an author on the paper, despite having conducted extensive work that was critical to the article.[11] When Nassry questioned his exclusion from the paper, Denice Wardrop, another employee at Riparia and a credited author on the paper, apologized for his exclusion as a listed author.[12] Nevertheless, in May 2018, during a presentation at a conference, Wardrop presented data and figures that Nassry had developed; she then characterized this to Nassry as a misunderstanding.[13] Wardrop later informed Nassry that she did not believe any plagiarism had occurred in that publication.[14]

---

[8]   *Id.* ¶ 53.
[9]   *Id.* ¶¶ 54-55.
[10]  *Id.* ¶¶ 124-26.
[11]  *Id.* ¶¶ 111-23.
[12]  *Id.* ¶¶ 127-31.
[13]  *Id.* ¶¶ 132-34.
[14]  *Id.* ¶ 157.

In June 2018, Wardrop was appointed the director of Riparia and became Nassry's direct supervisor.[15] Nassry was thereafter "given a project to complete after" Chamberlain and Wardrop "used budget funds without participating in the corresponding amount of work."[16] In November 2018, the Riparia research group attended a conference in Cooperstown, New York and, while at that conference, Nassry heard Chamberlain "loudly disparaging him."[17] In January 2019, Chamberlain was promoted to Associate Research Professor, despite Nassry's complaints regarding Chamberlain and despite Chamberlain's purported issues with alcohol.[18]

In February 2019, at lunch during a conference event, Nassry noticed a conference attendee speaking with Chamberlain; after Chamberlain pointed in Nassry's direction, the attendee walked to the table where Nassry was seated, picked up belongings from the chairs, and informed Nassry that she had been asked to move before returning to sit with Chamberlain.[19] In April 2019, Nassry informed Wardrop that he would not attend the next conference due to Chamberlain's behavior at previous conferences and, in May 2019, Nassry requested that Wardrop address Chamberlain's behavior.[20] Rather than address Chamberlain's behavior, Wardrop

---

[15]  *Id.* ¶ 58.
[16]  *Id.* ¶ 59.
[17]  *Id.* ¶ 61.
[18]  *Id.* ¶ 69.
[19]  *Id.* ¶¶ 71-74.
[20]  *Id.* ¶¶ 75-77.

reached out to Riparia's previous director—Robert Brooks—who then requested that Nassry apologize to Chamberlain.[21]

In June 2019, Wardrop advised Nassry not to teach a first year seminar, then informed Nassry that she had volunteered on the committee that would conduct the final interview for a position to which Nassry had applied, and "said there would be 'consequences.'"[22] That same month, Wardrop emailed Nassry and apologized for some of her conduct, stating that he had overheard conversations between her and a friend, and stating that it would not happen again.[23]

The following month Wardrop requested that Nassry perform administrative tasks for Chamberlain; Nassry refused, leading Wardrop to "scream at [Nassry] accusing him of blackmailing her by including details of Sarah Chamberlain's harassment in an email."[24] In June 2020, Nassry submitted a proposal to the EPA, but alleges that he was intimidated into not putting his name on the proposal due to (1) the harassment he had experienced—which led him to believe that Riparia had a better chance of receiving funding if his name was left off of the proposal—(2) Wardrop and Chamberlain's relationships with EPA staff, and (3) Wardrop's unspecified attempts to isolate Nassry from outside agencies.[25]

---

[21] *Id.* ¶¶ 80-83.
[22] *Id.* ¶¶ 150-52. These "consequences" are unspecified.
[23] *Id.* ¶ 86.
[24] *Id.* ¶¶ 87-89.
[25] *Id.* ¶¶ 91-92.

By March 1, 2021, "Nassry decided the situation was intolerable and informed the new director of Riparia (Dr. Trevor Birkenholtz) [that] he planned to resign from Penn State effective June 30, 2021."[26] Nassry later informed Birkenholtz that he had resigned due to Wardrop and Chamberlain's harassment.[27] On June 30, 2021, Nassry ceased working full time for Penn State, but "remained as a part-time, remote employee to continue advising a graduate student until December 31, 2021."[28] Beginning in December 2021 and continuing into July 2022, the Penn State Affirmative Action Office investigated Nassry's claims, although apparently nothing came of the investigation.[29]

On October 3, 2022, Nassry filed a complaint of gender discrimination and retaliation with the EEOC.[30] The EEOC ultimately took no action and issued a right to sue letter to Nassry on October 21, 2022.[31]

As a result of the conduct to which Nassry alleges he was exposed, in January 2023, Nassry filed a complaint—which he later amended—against Penn State, Wardrop, Nicholas P. Jones, Lee Kump, and Cynthia Brewer.[32] Nassry raises one federal claim for a violation of Title VII based on gender discrimination, sexual

---

[26] *Id.* ¶ 93.

[27] *Id.* ¶ 95.

[28] *Id.* ¶ 97.

[29] *Id.* ¶¶ 98-110, 184-94.

[30] *Id.* ¶ 6.

[31] *Id.* ¶ 7.

[32] Docs. 1, 15. In the opening paragraph of the amended complaint Nassry also lists Chamberlain as a defendant. Doc. 15 at 2. However, Chamberlain is not listed in the caption of the amended complaint, nor is she discussed in the "parties" section of the amended complaint, and it is clear that Chamberlain is not a party to this case. *Id.* at 1-5.

harassment, and constructive discharge, as well as state law claims for violations of the Pennsylvania Human Relations Act, the Pennsylvania Whistleblower Law, and wrongful termination.[33]

Defendants have filed a motion to dismiss three of the claims against it as barred by the statute of limitations—including the Title VII claim—and one claim as being preempted.[34] Nassry contends, as relevant to this Memorandum Opinion, that his Title VII claim is timely as there are sufficient allegations to state a claim for equitable tolling, which would render his Title VII claim timely.[35] Defendants have filed a reply brief, and Nassry has filed a sur reply brief, rendering this matter ripe for disposition.[36] For the following reasons, the motion to dismiss will be granted.

## II.    LAW

Under Federal Rule of Civil Procedure 12(b)(6), courts dismiss a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the landmark decisions of *Bell Atlantic Corp. v. Twombly*[37] and *Ashcroft v. Iqbal*,[38] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

---

[33] *Id.* at 38-43.
[34] Docs. 17, 18.
[35] Doc. 21 at 9-15.
[36] Docs. 22, 25.
[37] 550 U.S. 544 (2007).
[38] 556 U.S. 662 (2009).

on its face.'"[39] The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[40]

With respect to motions to dismiss based upon a statute of limitations, "[t]he running of the statute of limitations is an affirmative defense."[41] Consequently, "[a] complaint is subject to dismissal for failure to state a claim on statute of limitations grounds only when the statute of limitations defense is apparent on the face of the complaint."[42]

## III.   ANALYSIS

Defendants seek dismissal of Nassry's Title VII claim on the ground that said claim is barred by the relevant statute of limitations, as assertions of discrimination must be filed with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the discriminatory action, and the complaint clearly establishes

---

[39] *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).
[40] *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).
[41] *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017).
[42] *Id.*

that such a claim was not timely filed.[43] Nassry responds that he is entitled to equitable tolling because, instead of timely filing a complaint with the EEOC, he attempted to "address the problems he encountered through existing channels at" Penn State, which is "commendable" as it potentially avoids overburdening the EEOC.[44]

Title VII prohibits discrimination against an employee on the basis of, *inter alia*, that individual's gender.[45] "Before filing a claim in federal court, a Title VII plaintiff in Pennsylvania must file a charge of discrimination with the EEOC within 300 days of the alleged unlawful employment practice."[46] "If a claimant fails to exhaust his or her claim within the requisite time period, that claim is administratively barred"[47] and, consequently, "time-barred."[48] However, the EEOC filing requirement is "non-jurisdictional" and therefore subject to "equitable tolling principles."[49]

Although Nassry does not contest that his complaint to the EEOC was filed more than 300 days after the events of which he complains and was therefore facially untimely, the Court nevertheless independently analyzes the timeliness of his filing with the EEOC. The last overt act of alleged discrimination or harassment of which

---

[43]   Doc. 18.
[44]   Doc. 22 at 13-15.
[45]   42 U.S.C. § 2000e–2(a).
[46]   *Noel v. The Boeing Co.*, 622 F.3d 266, 270 (3d Cir. 2010).
[47]   *Id.* (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)).
[48]   *Mikula v. Allegheny Cnty. Of PA*, 583 F.3d 181, 183 (3d Cir. 2009).
[49]   *Commc'ns Workers of Am. v. N.J. Dep't of Pers.*, 282 F.3d 213, 216-17 (3d Cir. 2002).

Nassry complains occurred in June 2020, when he was allegedly intimidated into not including his name on an EPA funding proposal.[50] Even assuming that this conduct occurred on June 30, 2020, Nassry would need to have filed an EEOC complaint on or before April 26, 2021—a full 525 days prior to the date that Nassry actually filed his EEOC complaint.[51] Any complaint as to harassment, discrimination, or retaliation is therefore facially untimely.

With regard to Nassry's constructive discharge claim, while his final day of employment was December 31, 2021,[52] he submitted his letter of resignation on March 1, 2021, allegedly because his employment at Penn State "was intolerable."[53] This leaves some question as to whether Nassry's constructive discharge was effectuated on March 1, 2021, when he submitted his notice of resignation, or December 31, 2021, his last day of employment at Penn State.

Although the United States Court of Appeals for the Third Circuit has not weighed in on this issue, numerous district courts within this Circuit have determined that the applicable "statute of limitations begins to run on the date the constructive discharge is effectuated."[54] Importantly, a number of circuit and district

---

[50] Doc. 15 ¶¶ 91-92. Nassry baldly alleges that "[d]espite no longer having a full-time position, the harassment, discrimination and retaliation continued into 2022." *Id.* ¶ 100. However, this statement is "no more than [a mere] conclusion[]" and therefore is "not entitled to the assumption of truth." *Connelly*, 809 F.3d at 787.

[51] Doc. 15 ¶ 6.

[52] *Id.* ¶ 97.

[53] *Id.* ¶ 93.

[54] *Zurchin v. Ambridge Area Sch. Dist.*, 300 F. Supp. 3d 681, 690 (W.D. Pa. 2018) (collecting cases).

courts have concluded that any constructive discharge is effectuated "on the date a plaintiff gives notice of his or her resignation."[55] Those courts have reached that decision on the logical conclusion that "[i]n the case of constructive discharge, it is only the employee who can know when the atmosphere has been made so intolerable by the discrimination-motivated employer that the employee must leave."[56] Consequently, the limitations period begins to run "on the date the plaintiff knew or should have known of his or her inability to return to work," which is generally the date that a letter of resignation is submitted, not the last date of actual employment.[57]

This Court adopts that reasoning and concludes that the date Nassry submitted his letter of resignation, March 1, 2021, is the relevant date upon which the limitations period began to run.[58] That date is the date that Nassry's constructive discharge occurred, as his allegations make clear that, by that date, his conditions of employment had become "intolerable,"[59] and he therefore "knew or should have known of [his] inability to return to work."[60] Consequently, the limitations period to file an EEOC complaint based on Nassry's constructive discharge ran 300 days later

---

[55]  *Ilori v. Carnegie Mellon Univ.*, 742 F. Supp. 2d 734, 751 (W.D. Pa. 2010) (collecting cases).

[56]  *Id.* at 753 (quoting *Gerhart v. Boyertown Area School District,* No. 00-5914, 2002 WL 31999365, at *4 n.9 (E.D. Pa. Mar. 4, 2002)).

[57]  *Id.* at 752 (quoting *Gary v. Washington Metro. Area Transit Auth.*, 886 F. Supp. 78, 91 (D.D.C. 1995) (bracket omitted)).

[58]  Doc. 15 ¶ 93.

[59]  *Id.*

[60]  *Ilori*, 742 F. Supp. 2d at 752.

on December 27, 2021, or 280 days prior to the date that Nassry actually filed his complaint with the EEOC.

Because Nassry's EEOC filing was untimely, the Court turns to the question of whether the amended complaint states facts upon which one could conclude that equitable tolling may be warranted, which would render Nassry's Title VII claim timely. As stated above, claims under Title VII are subject to "equitable tolling principles."[61]

"It is well established that a court may "rescue a claim otherwise barred as untimely by a statute of limitations when a plaintiff shows []he has been prevented from filing in a timely manner due to sufficiently inequitable circumstances."[62] However, "[t]olling is an extraordinary remedy, and is proper only when the principles of equity would make the rigid application of a limitation period unfair."[63] The Third Circuit has noted that:

> There are three principal, though not exclusive, situations in which equitable tolling may be appropriate: (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting her rights; or (3) where the plaintiff has timely asserted her rights mistakenly in the wrong forum.[64]

---

[61]   *Commc'ns Workers of Am.*, 282 F.3d at 216-17.

[62]   *D.J.S.-W. by Stewart v. United States*, 962 F.3d 745, 749-50 (3d Cir. 2020) (brackets and internal quotation marks omitted).

[63]   *Id.* at 750 (brackets, citations, and internal quotation marks omitted).

[64]   *Id.* (brackets and ellipsis omitted).

"In addition, a litigant will not receive the benefit of tolling in any of these situations unless she exercised due diligence in pursuing and preserving her claim."[65] "That is, tolling will never extend to 'a garden variety claim of excusable neglect, such as a simple miscalculation that leads a lawyer to miss a filing deadline.'"[66]

Nassry asserts that he did not file a timely complaint with the EEOC because he "did not run to the [EEOC] as soon as problems arose with the Defendants. He [instead] attempted to resolve the issues on his own using the existing channels established at" Penn State.[67] Nassry's argument seems to demonstrate that he knew of the limitations period and simply chose to ignore the EEOC filing deadline in favor of pursuing remedies internally through Penn State—although it is unclear what remedy Nassry expected from these internal processes since, at the time he was pursuing them, he had already offered his resignation and was either on the verge of finishing his time at Penn State, or had already ceased working for Penn State.[68]

The Court has been unable to locate any case that equitably tolled the limitations period in circumstances such as these. Indeed, this Court cannot locate any case where a plaintiff was bold enough to even offer such a reason in support of equitable tolling. Nor could equitable tolling reasonably apply in these circumstances. Nassry describes his conduct in failing to timely pursue an EEOC

---

[65] *Id.* (internal quotation marks omitted).
[66] *Id.* (quoting *Holland v. Florida*, 560 U.S. 631, 651-52 (2010)).
[67] Doc. 21 at 13.
[68] *See* Doc. 15 ¶¶ 98-110.

claim as "commendable" and "model behavior" since such behavior may help prevent the EEOC from becoming "overwhelmed."[69] Commendable or not, there simply is no way to conclude that Nassry was "prevented from filing in a timely manner due to sufficiently inequitable circumstances."[70] Rather, Nassry chose not to file a timely complaint with the EEOC, instead opting to pursue alternative systems of remedy; nothing prevented Nassry from timely filing with the EEOC other than his own choices and actions.

Simply put, Nassry did not exercise "due diligence in pursuing and preserving [his] claim."[71] By the time Nassry submitted his resignation, and certainly by the time his full-time employment ended and he remained at Penn State on a remote and part-time basis only to assist a single graduate student, Nassry's claims of discrimination, retaliation, and constructive discharge would have been apparent to him. To that end, Nassry alleges that, in June 2021, he met with an attorney regarding his issues at Penn State, indicating that Nassry was aware of his claims.[72] By that time, Nassry's claims were clear, and a reasonable person intent on preserving those claims would have initiated the process of filing a complaint with the EEOC.

Bearing in mind that courts must "approach the doctrine [of equitable tolling] warily, so as to guard against possible misuse" and that the limitations period may

---

[69]   Doc. 21 at 14-15.
[70]   *D.J.S.-W.*, 962 F.3d at 749-50.
[71]   *Id.* at 750.
[72]   Doc. 15 ¶¶ 175-78.

"not to be disregarded by courts out of a vague sympathy for particular litigants,"[73] the Court concludes that, in these circumstances, equitable tolling is inappropriate as a matter of law. Nassry's Title VII claim is therefore time-barred and will be dismissed with prejudice.

As the Court will dismiss Nassry's Title VII claim with prejudice, all that remains are his three state law claims. It is well established that, "[u]nder 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over a claim if 'the district court has dismissed all claims over which it has original jurisdiction.'"[74] Because this Court has "dismissed the Title VII claim that provided the court with its jurisdiction," it declines to exercise supplemental jurisdiction over Nassry's remaining state law claims, and those claims will be dismissed without prejudice.[75]

## IV. CONCLUSION

For the reasons stated herein, Defendants' motion to dismiss the amended complaint will be granted.  An appropriate Order follows.

BY THE COURT:

_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge

---

[73] *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 240 (3d Cir. 1999) (quoting *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984)).
[74] *Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 172, 181 (3d Cir. 1999).
[75] *Id.*